PEOPLE v ABRAHAM

Docket No. 227938. Submitted March 18, 2003, at Detroit. Decided April
    10, 2003, at 9:00 A.M. Leave to appeal sought.
    Nathaniel J. Abraham, at twelve years of age, was tried as an adult
    and convicted by a jury in the Oakland Circuit Court, Family Divi-
    sion, of second-degree murder for a homicide committed by the
    defendant when he was eleven years old. The court, Eugene A.
    Moore, J., sentenced the defendant as a juvenile to detention at the
    Maxey Boys Training School until his twenty-first birthday. The
    defendant appealed.
        The Court of Appeals *held*:
        1. The trial court did not abuse its discretion in denying the
    defendant's motion for a new trial on the asserted ground that the
    prosecution failed to establish that the defendant acted maliciously
    when he shot a gun at trees when people were nearby. Notwith-
    standing the defense's contention that the defendant could not have
    had wanton and willful disregard of the likelihood that the natural
    tendency of his behavior was to cause death or great bodily harm
    because the defendant was developmentally, mentally, and emo-
    tionally impaired, evidence of the requisite malice was provided
    through the testimony of a child psychologist who related the
    defendant's statement that the defendant was fearful that he might
    hit someone when shooting at trees.
        2. The trial court did not deny the defendant his right to a fair
    trial in not severing for separate trials the original charges of first-
    degree murder and assault with intent to commit murder. The two
    incidents underlying the original charges were related offenses for
    purposes of MCR 6.120(B), which mandates separate trials for
    unrelated offenses only.
        3. The defendant's right to a fair trial was not violated by any the
    alleged instances of prosecutorial misconduct in arguments to the
    jury. The prosecutor did not urge the jurors to convict the defen-
    dant as part of their civic duty in remarking that the victim
    deserved justice. The remark was in response to an argument by
    the defense that the prosecution and the judicial system brutalized
    the defendant by putting him on trial. Error requiring reversal did
    not result from the prosecutor's remark to the jury that the victim

deserved justice whether or not the bullet that killed him was fired from the defendant's gun. Any prejudice resulting from the remark was cured by the trial court's instruction to the jury that attorneys' statements are not evidence, that the prosecution bears the burden of proof, and that conviction required proof that the defendant killed the victim. The prosecutor did not erroneously ask the jury to sympathize with the victim's family when she remarked to the jury that the victim was someone's nephew, grandchild, or son. The prosecutor did not improperly shift the burden of proof when she remarked to the jury that the presumption of the defendant's innocence could be removed by the evidence presented by the prosecution. Prosecutorial misconduct that violated the defendant's right to a fair trial did not result when the prosecutor attempted to introduce evidence of prior bad acts by the defendant in the course of questioning a witness. The trial court instructed the jury to disregard that portion of the colloquy between the prosecutor and the witness, and the jury is presumed to have followed the trial court's instruction.

4. MCL 712A.2d, which allows the trial and sentencing of juveniles as adults, is not violative of the constitutional guarantee of due process. Juveniles currently have no constitutional right to be treated differently in criminal matters than adults. No merit lies in the defendant's arguments that the statute is unconstitutional because it permits the prosecution to automatically waive a particular defendant into criminal court without a special prior hearing under MCL 712A.2d(1), (3), because it does not specify a minimum age under which a juvenile may not be charged and tried as an adult in any circumstances, or because the prosecution has unfettered charging discretion. Finally, the defendant's right to due process was not violated on the asserted ground that he was not competent to stand trial. The defendant failed to preserve the issue for appellate review by not moving for a new trial and evidentiary hearing on this basis in the trial court. In any event, the defendant's competency was evaluated and confirmed by two doctors and the trial court.

Affirmed.

FITZGERALD, J., concurring, stated that he agreed with the result reached by the majority but wrote separately to urge the Legislature to impose a minimum age under which a juvenile cannot be tried as an adult.

CRIMINAL LAW — JUVENILES — TRIAL AND SENTENCING AS ADULTS.

The statute that allows the trial and sentencing of juveniles as adults for certain offenses does not violate due process in granting prosecutors the discretion to charge and try juveniles as adults, or in

not specifying a minimum age under which a juvenile may not be charged and tried as an adult (MCL 712A.2d).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *John S. Pallas*, Assistant Prosecuting Attorney, for the people.

*William Lanstat* for the defendant on appeal.

Before: O'CONNELL, P.J., and FITZGERALD and MURRAY, JJ.

O'CONNELL, P.J. Defendant Nathaniel Jamar Abraham appeals as of right his jury conviction and sentence for second-degree murder, MCL 750.317; see also MCL 712A.2d (statute allowing charging, trying, and sentencing juvenile as an adult). Defendant was sentenced to placement at the Maxey Boys Training School within the juvenile justice system until his twenty-first birthday. At the time of defendant's well-publicized trial, defendant was twelve years old. We affirm.

## I. FACTS AND PROCEEDINGS

This is not the first time this case has been before us. In *People v Abraham*, 234 Mich App 640; 599 NW2d 736 (1999), this Court affirmed the trial court's order denying defendant's motion to quash the information. In addition, this Court reversed the trial court's order granting defendant's motion to suppress evidence of his statements to the police. We set out the facts in our previous opinion as follows:

This case arises from the fatal shooting of Ronnie Green, and the nonfatal shooting of Michael Hudack, on October 29, 1997. Two days later the police questioned defendant about the shootings. According to the investigating officer, defendant first offered various innocent explanations of his role in the matter, then finally implicated himself in the shooting of Green. A probable cause hearing on the prosecution's petition requesting that defendant, then aged eleven years, be tried as an adult was held the following month. At the hearing, friends of defendant testified that defendant broke into a house and stole a .22-caliber rifle, practiced shooting at balloons and streetlights, stated an intention to shoot gang members who had been bothering him, and then boasted that he had shot someone. Defendant was bound over for trial on one count of first-degree premeditated murder, MCL 750.316(1)(a) . . . , one count of assault with intent to commit murder, MCL 750.83 . . . , and two counts of possession of a firearm during the commission of a felony, MCL 750.227b . . . .

\*     \*     \*

The police took defendant from school to the police station for questioning, stopping on the way to apprise defendant's mother of the matter. Defendant's mother joined defendant at the police station several minutes after defendant arrived with the police. Defendant and his mother were advised of defendant's [*Miranda*[1] rights], in response to which they indicated that defendant did not wish to speak to an attorney and agreed to waive defendant's right to remain silent. Both signed a document stating that defendant waived his *Miranda* rights. [*Abraham, supra* at 643-644.]

## II. GREAT WEIGHT OF THE EVIDENCE

The defense argues on appeal that a new trial was warranted because the prosecution failed to establish

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

that defendant acted maliciously when he shot a gun at trees when people were nearby. We disagree.

As we held in *People v Simon*, 174 Mich App 649, 653; 436 NW2d 695 (1989):

> It is unclear whether defendant's argument addresses the sufficiency of the evidence or charges that the verdict was against the great weight of the evidence. Because defendant argued this issue both in a motion for a directed verdict and a motion for new trial, we will address it using the stricter standard applicable to reviewing a denial of a motion for new trial based on the verdict being against the great weight of the evidence.

> The standard of review applicable to a denial of a motion for a new trial is whether the trial court abused its discretion. The trial court may grant a new trial if it finds the verdict was not in accordance with the evidence and that an injustice has been done. *People v Hampton*, 407 Mich 354, 373; 285 NW2d 284 (1979) . . . . An appellate court will find an abuse of discretion only where the denial of the motion was "manifestly against the clear weight of the evidence." *People v Ross*, 145 Mich App 483, 494; 378 NW2d 517 (1985).

See also *People v Stiller*, 242 Mich App 38, 53; 617 NW2d 697 (2000).

A conviction for the offense of second-degree murder requires proof of (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Second-degree murder is a general intent crime, which mandates proof that the killing was done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v Herndon*, 246 Mich App 371, 386; 633

NW2d 376 (2001) (quotation omitted). This concept is also known as malice. *Stiller, supra* at 43.

The defense specifically contends that because defendant was developmentally, mentally, and emotionally impaired, he could not have had "wanton and wilful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." *Herndon, supra* at 386. Evidence was presented at trial that defendant announced he was going to shoot "someone" before the shooting occurred and told people about it afterward. The general intent to kill need not be directed at an identified individual or the eventual victim. See *Abraham, supra* at 658, citing *People v Lawton*, 196 Mich App 341, 350-351; 492 NW2d 810 (1992); see also *People v Plummer*, 229 Mich App 293, 304-305 & n 2; 581 NW2d 753 (1998) (the doctrine of transferred intent permits culpability for murder where the defendant intended to shoot someone other than actual victim). Clinical child psychologist Dr. Lynne Schwartz, who personally examined defendant, indicated that defendant stated that he was fearful that he might hit someone when shooting at trees. This testimony qualifies as showing that defendant had the "intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm," *Herndon, supra* at 386. It was not the place of the trial court to supersede the jury's credibility judgment believing those witnesses over defendant's psychological experts. *People v Elkhoja*, 251 Mich App 417, 446, 447; 651 NW2d 408 (2002), quoting *People v Lemmon*, 456 Mich 625, 642-643, 647; 576 NW2d 129 (1998). Moreover, circumstantial and inferential evidence is admissible at trial. *People v Carines*, 460

Mich 750, 757; 597 NW2d 130 (1999); *Abraham, supra* at 658. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial in light of the great weight of the evidence.[2] See *Simon, supra.*

### III. SEVERANCE OF THE CHARGES

Defendant argues that the trial court improperly denied him a fair trial by failing to sever the charges of first-degree murder,[3] MCL 750.316, and assault with intent to commit murder, MCL 750.83. We disagree.

Generally, the interpretation of a court rule is a question reviewed de novo. *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002). MCR 6.120 provides in pertinent part:

> (B) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on
>
> (1) the same conduct, or
>
> (2) a series of connected acts or acts constituting part of a single scheme or plan.

MCR 6.120(B) is a codification of our Supreme Court's decision in *People v Tobey*, 401 Mich 141, 153; 257 NW2d 537 (1977). In *Tobey*, our Supreme Court held that where "offenses are joined solely because they are of the same or similar character, the defendant shall have a right to severance of the offenses."

---

[2] Furthermore, one of the primary defenses asserted at trial, diminished capacity, has since been effectively abolished by our Supreme Court. See *People v Carpenter*, 464 Mich 223, 237; 627 NW2d 276 (2001).

[3] First-degree murder was one of the original charges, but the jury chose the lesser offense of second-degree murder in its verdict.

*Id.* at 151; see also *People v Daughenbaugh,* 193 Mich App 506, 509-510; 484 NW2d 690 (1992), mod in part on other grounds 441 Mich 867 (1992).

Severance was not mandatory in the present case because the shootings occurred within a couple of hours of each other in the same neighborhood, with the same weapon, and were part of a set of events interspersed with target shooting at various outdoor objects. Further, the same witnesses testified to a single state of mind applicable to both offenses. In contrast, the two offenses that were severed in *Tobey, supra* at 144, arose out of events that occurred twelve days apart. In *Daughenbaugh, supra* at 510, the offenses occurred thirteen days apart. Thus, because the two incidents in the present case were "related" under MCR 6.120(B), severance was not mandatory.[4]

### IV. PROSECUTORIAL MISCONDUCT

Defendant next claims that he was denied a fair trial by several instances of prosecutorial misconduct. We disagree.

Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo. *People v Pfaffle,* 246 Mich App 282, 288; 632 NW2d 162 (2001). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted). *People v Watson,* 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial-misconduct issues are decided case by case, and the reviewing court must examine the perti-

---

[4] Defendant does not challenge the trial court's ruling on the narrow ground of discretionary severance under MCR 6.120(C).

nent portion of the record and evaluate a prosecutor's remarks in context. *Id.* For example, a prosecutor may not urge the jurors to convict the defendant as part of their civic duty. *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995). This type of argument unfairly places issues into the trial that are more comprehensive than a defendant's guilt or innocence and unfairly encourages jurors not to make reasoned judgments. *People v Crawford,* 187 Mich App 344, 354; 467 NW2d 818 (1991). In addition, a prosecutor may not appeal to the jury to sympathize with the deceased and his family. *Watson, supra* at 591. Furthermore, a prosecutor may not comment on a defendant's failure to testify or present evidence, i.e., the prosecutor may not attempt to shift the burden of proof. *People v Reid,* 233 Mich App 457, 477-478; 592 NW2d 767 (1999).

Defendant claims error in the following remarks made by the prosecutor in her rebuttal closing argument:

> [*Prosecutor*]: . . . [A]fter taking pause and looking at everything, there is an underlying determination that Ronnie Green deserves justice—[Objection overruled.]
>
> Ronnie Green deserves justice whether or not the bullet that killed him was fired from the gun of someone other than Nathaniel Abraham, or from the gun of Nathaniel Abraham. And when the facts support his guilt beyond a reasonable doubt that's why with all that pause I stand before you.
>
> *          *          *
>
> . . . Nathaniel Abraham walks in this courtroom cloaked with the presumption of innocence. . . . But you see, it can be removed. And as each piece of the puzzle has been handed to you, each bit of the factual evidence from the people who know, that cloak is removed more and more

and more until it's completely gone. And he stands before you as he truly is. [Objections overruled.]

If you consider all the evidence, you will know he's guilty; he's guilty.

The defense objected during this closing statement on the ground that it was not within the proper scope of rebuttal, that it was an improper revenge argument, and that it was an improper comment on the presumption of innocence.

On appeal, defendant first claims that the prosecutor improperly engaged in a "civic duty" or "justice" argument. However, defendant did not argue this ground at trial. Instead, defendant argued that the prosecutor's comments on this issue were outside the scope of rebuttal. In his motion for vacatur, however, defendant did claim that the prosecutor improperly made a civic-duty and justice argument. Thus, although defendant raised this issue in part before the trial court, see, generally, *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994), the issue is unpreserved because defendant should have raised the entire challenge *at trial* for a possible curative jury instruction. See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). Consequently, review of this issue is limited to whether plain error affecting substantial rights occurred. *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002). Reversal here is warranted only when a plain error resulted in the conviction of an actually innocent defendant[5] or seriously affected the fairness, integrity, or public reputa-

---

[5] We do not believe that, given the evidence presented in this case, defendant was "actually innocent." See *People v Schutte*, 240 Mich App 713; 613 NW2d 370 (2000); see also section II, *supra*.

tion of the judicial proceedings. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000).

Taken in context, the prosecutor's statement that "after taking pause and looking at everything, there is an underlying determination that Ronnie Green deserves justice" was a proper response to a defense argument. See *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977); *Schutte, supra* at 721. Indeed, in its closing statement, the defense had just sharply criticized the prosecution and the judicial system for putting a then-eleven-year-old child on trial, and accused them of "brutalizing" defendant. The prosecutor specifically replied that, contrary to defendant's argument of brutalization, she considered this case at length and with emotional difficulty, and came to the conclusion that bringing the charge was proper. Thus, this statement did not impermissibly implore the jury to do their civic duty. See *Bahoda, supra.*

The prosecutor's statement that "Ronnie Green deserves justice whether or not the bullet that killed him was fired from the gun of someone other than Nathaniel Abraham, or from the gun of Nathaniel Abraham," also was not challenged at trial. Therefore, we review this statement for plain error. See *Stanaway, supra.* Our review of the prosecutor's rebuttal argument reveals that the "justice" comment was unnecessary because there was no issue about causation, the comment was not responsive to a defense argument, and the comment was a clear misstatement of the law. See *Duncan, supra; Schutte, supra;* see also *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002) (a prosecutor's clear misstatement of the law, if uncorrected, can deprive a defendant of a fair trial). Contrary to the prosecutor's

statement here, the jury could only convict defendant of murder if it believed *defendant* intentionally caused the death of the deceased. See MCL 750.317; *Goecke, supra* at 463-464.

However, this remark was isolated, poorly worded, and slightly difficult to understand. Thus, it could have been a mistake and not error requiring reversal. See *Bahoda, supra* at 272; see also, generally, *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Moreover, the trial court's instructions to the jury that the attorneys' arguments are not evidence, that the prosecution bears the burden of proof, and that the elements of the crime require proof that defendant killed Green likely cured any prejudice resulting from this statement. See, generally, *Watson, supra* at 586; *Grayer, supra.* Given the evidence presented in this case, this nonstructural error does not require reversal because it was harmless beyond a reasonable doubt. *People v Graves*, 458 Mich 476, 482; 581 NW2d 229 (1998); *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001).

The second ground defendant briefly raises on appeal is that the prosecutor erroneously asked the jury to sympathize with the family of the deceased, presumably when she stated: "I have actually wept about my responsibility for the family of Ronnie Green. . . . Nicole Green and Robbin Adams have lost Ronnie. Was somebody's nephew, somebody's grandchild, somebody's son . . . ." This issue also was not raised specifically at trial or in the posttrial motion; thus, it is unpreserved. Although these statements were passionate, see *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (prosecution need not use the least prejudicial evidence available to estab-

lish a fact in issue), they were not plainly erroneous. See also *Schutte, supra.* Indeed, viewed in context, these statements followed the prosecutor's statement of concern for defendant's mother, concern for defendant's well-being at a young age, and, again, the prosecutor's defense of herself after being accused of brutalizing a child. See *Duncan, supra*; *Schutte, supra* at 721. Consequently, no error occurred here either.

Third, defendant now claims that the prosecutor attempted to shift the burden of proof to him. See *Reid, supra* at 477-478. Again, defendant does not point to where in the record this occurred. See *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993). Moreover, this issue is unpreserved because it was never noted at trial. From our review of the record, we presume that the following excerpt is the most likely to form the basis for this challenge: "Nathaniel Abraham walks in this courtroom cloaked with the presumption of innocence. . . . But you see, it can be removed." While certainly illustrative, these statements by their terms do not assert that defendant has to prove he is not guilty. In any event, these statements are largely true—a defendant is presumed innocent, and, in fact, the prosecution can defeat the presumption with evidence. Thus, we find no merit to the claim that these statements attempted to shift the burden of proof to defendant. See *Reid, supra.*

Next, defendant raises residual issues regarding the above-alleged errors: that the timing of the prosecutor's rebuttal closing statement was especially prejudicial because she was last to speak, that her remarks were repetitively improper, and that the prosecutor's closing was especially prejudicial in light

of the weak evidence against defendant. Our review of these issues results in a conclusion that they do not change the result because they add nothing to the above-stated analysis.

Finally, defendant claims that the prosecutor inserted improper, inflammatory "other act" evidence through her questioning of Dr. Shiener, in violation of MRE 404(b):

> *Q.* [*Prosecutor*]: Doctor, you also indicated that you reviewed reports from the Oakland County Community Mental Health Services and Child and . . . Adolescence Clinic . . . ?
>
> *A.* [*Dr. Shiener*]: Yes.
>
> *Q.* All right. And in reports dated May 10 of 1996, don't they indicate in there that the presenting problem of Nathaniel was fighting in school and not listening to teachers.
>
> *A.* On the intake, yes.
>
> *Q.* And also presenting problems of stealing from neighbors' garages?
>
> *A.* Yes.
>
> *Q.* Under . . . social and emotional status, doesn't it indicate that he was suspended from school in October, '95 for carrying—
>
> [*Defense counsel*]: Excuse me . . . Judge. What is this? . . . Is this 404B—? I hope not. What . . . are these issues going to? Judge he can—the basis of his opinion, but she can't stand here and do what I think she's doing, which is a direct violation . . . .

The court instructed the jury that they were to disregard the above colloquy between the prosecutor and Dr. Shiener in its entirety.

A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence. *People v Noble*, 238 Mich App 647, 660; 608

NW2d 123 (1999). Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. See *Graves, supra* at 486; see also generally *Stanaway, supra* at 687. We are not persuaded that the above exchange had a prejudicial effect so severe that it was not cured by the instruction appropriately issued. See *Duncan, supra* at 15-16. Defendant was entitled to a fair trial, not a perfect one. *People v Beach,* 429 Mich 450, 491; 418 NW2d 861 (1988). Therefore, we hold that none of the prosecutor's statements violated defendant's right to a fair trial.

### V. THE CONSTITUTIONALITY OF MCL 712A.2d

Defendant contends that the statute allowing the trial and sentencing of juvenile defendants as adults is unconstitutionally violative of due process because it allows the prosecutor discretion to charge and try juveniles as adults for certain offenses. Again, we disagree.[6] The statute provides in part:

> (1) In a petition . . . alleging that a juvenile is within the court's jurisdiction . . . for a specified juvenile violation, the prosecuting attorney may designate the case as a case in which the juvenile is to be tried in the same manner as an adult. . . .

---

[6] The prosecution claims that defendant has no standing with regard to this issue because he was not sentenced as an adult. See *Dep't of Consumer & Industry Services v Shah,* 236 Mich App 381, 385; 600 NW2d 406 (1999), and *People v Yeoman,* 218 Mich App 406, 420; 554 NW2d 577 (1996) (To have standing to bring an appeal, a party must be aggrieved by the lower court's decision, there must be some substantial judgment to appeal, and there must be some substantial right that the judgment would prejudice.). However, because defendant is precisely challenging the juvenile *trial* portion of MCL 712A.2d, by which he was tried as an adult and convicted of second-degree murder, we decline to deny defendant standing in this matter.

\*     \*     \*

> (3) If a case is designated under this section, the case shall be set for trial in the same manner as the trial of an adult in a court of general criminal jurisdiction unless a probable cause hearing is required under subsection (4). [MCL 712A.2d.[7]]

Defendant's lengthy, intertwined due-process arguments break down into four main claims. First, defendant argues that the statute is unconstitutional because it permits the prosecutor in its discretion to automatically waive a particular defendant into criminal court without a special prior hearing under MCL 712A.2d(1), (3).

The constitutionality of a statute is a question ordinarily reviewed de novo. *People v Jensen (On Remand)*, 231 Mich App 439, 444; 586 NW2d 748 (1998). Statutes are presumed constitutional, and courts must construe a statute as constitutional if at all possible. *People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 593 (1996). The party challenging the constitutionality of the statute has the burden of proving its unconstitutionality. *People v Trinity*, 189 Mich App 19, 21; 471 NW2d 626 (1991). The challenger to the face of a statute must establish that no circumstances exist under which it would be valid. *Council of Orgs v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997). One general proposition to keep in mind is that, while it may be controversial, juveniles currently have no constitutional right to be treated differently in criminal matters than adults. *People v Conat*, 238 Mich App 134, 158; 605

---

[7] For a concise explication of the juvenile "waiver" statutes, see, e.g., *People v Conat*, 238 Mich App 134, 139-143; 605 NW2d 49 (1999).

NW2d 49 (1999) (O'CONNELL, J., holding that statute requiring adult sentence for juveniles tried as adults, MCL 769.1, was constitutional). Whether this principle of law should be changed is an inquiry for our Supreme Court or the Legislature.[8] See *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992), cited in *Conat, supra* at 164.

Consequently, defendant's argument on appeal, while interesting in its recitation of history of the juvenile justice system in this country and in its comparison of other states' juvenile charging and sentencing statutes, does not add very much to this Court's task on appeal. See *id.* (arguments concerning whether the law is undesirable, unfair, unjust, or inhumane should be addressed to the Legislature). Defendant repeatedly claims that he was denied due process as a juvenile subjected to an adult proceeding. We disagree. Defendant was tried in an ordinary criminal trial in the family division of the circuit court and received all due-process protections to which any defendant is entitled:[9] notice of the charges against him by way of an indictment; a preliminary examination determining whether the evidence was sufficient for bindover; initial counsel provided by the state, not to mention that defendant retained *three* other attorneys of some repute; and a fair, albeit imperfect trial. See MCL 712A.2d(4) (providing for a probable-cause

---

[8] This is particularly true of defendant's appealed sub-issue, "MCL 712A.2d is not rational and is against public policy."

[9] Recall that defendant and his mother together waived his *Miranda* rights before answering police questions in this matter. See *Abraham, supra* at 651-652. Furthermore, as the prosecution points out, defendant had the additional due-process protection of twelve jurors in his trial as opposed to the six jurors that serve in an ordinary family-division trial. See MCR 5.911(C).

hearing—also known as a preliminary examination—for juveniles tried as adults), (7) (providing for all ordinary due-process protections afforded in ordinary criminal court). In *Conat, supra* at 159, this Court held that the statute requiring adult sentences for juveniles tried as adults, MCL 769.1, does not violate due process. The same reasoning applies to MCL 712A.2d. Furthermore, the preeminent consideration in this case, that juveniles are simply not constitutionally entitled to better treatment or more procedural protections than adults in criminal courts, controls. See *Conat, supra* at 158.

Second, defendant contends that MCL 712A.2d is unconstitutional because it does not specify a minimum age under which a juvenile may *not* be charged and tried as an adult in any circumstances. In addition to the other reasons stated above for sustaining the statute at issue, we reiterate that the wisdom or humanity of MCL 712A.2d is not within the authority of this Court to determine where children have no constitutional right to juvenile prosecution in this state.[10] See *Conat, supra; Kirby, supra.* It is properly within the prosecution's discretion to determine whether the state can prove the criminal intent of a child at any particular age. See *Conat, supra* at 150-153. This analysis also subsumes defendant's third argument, that the prosecutor has unconstitutionally unfettered charging discretion. This Court in *Conat, supra,* disposed of this argument in a similar manner,

---

[10] For the above-stated reasons, defendant's "as-applied" challenge to MCL 712A.2d concerning himself, allegedly a developmentally six- to eight-year-old child, also fails. See *Paragon Properties Co v Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996) ("An 'as applied' challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution.").

and we conclude that its reasoning is equally applicable in the present case:

> [T]his argument ignores the commonplace interaction between all three branches of government in determining what punishment is given to criminal offenders; namely, that the Legislature defines the sentences, the court fashions and imposes individual sentences within the legislatively defined parameters, and the prosecutor brings charges against defendants that inevitably affect which sentences are available for the court to impose.
>
> The judicial power to hear and determine controversies includes the power to exercise discretion in imposing sentences. However, this sentencing discretion is limited by the Legislature, which has the power to establish sentences. For example, the Legislature may set a minimum and a maximum sentence for a particular offense. Courts have no sentencing discretion unless it be conferred upon them by law. In other words, the Legislature has the exclusive power to determine the sentence prescribed by law for a crime, and the function of the court is only to impose a sentence under and in accord with the statute. [*Id.* at 147 (citations and quotations omitted).]

Fourth and finally, defendant failed to preserve for appeal the issue whether he was competent to stand trial because he did not move for a new trial and evidentiary hearing on this basis in the trial court. See *People v Lucas*, 393 Mich 522, 529; 227 NW2d 763 (1975); see also, generally, *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995). Thus, reversal would be warranted only if a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Schutte, supra* at 720. A defendant is presumed to be competent to stand trial. MCL 330.2020(1); *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). In the present

case, defendant's competency was evaluated and confirmed three times—by Drs. Schwartz and Margaret Stack and the trial court itself. We are not persuaded that plain error occurred in this regard.[11] See *Schutte, supra.* Therefore, the trial court did not err in denying defendant's motion for vacatur on this ground.

Affirmed.

MURRAY, J., concurred.

FITZGERALD, J. (*concurring*). I concur in the result reached by the majority. However, I write separately to address defendant's argument that MCL 712A.2d(1) is unconstitutional because it does not specify a minimum age under which a juvenile may *not* be tried as an adult.

MCL 712A.2d(1) provides:

> In a petition or amended petition alleging that a juvenile is within the court's jurisdiction under section 2(a)(1) of this chapter for a specified juvenile violation, the prosecuting attorney may designate the case as a case in which the juvenile is to be tried in the same manner as an adult. An amended petition making a designation under this subsection shall be filed only by leave of the court.

"Specified juvenile violation" is defined in MCL 712A.2d(9).[1]

---

[11] We do not undertake lightly the specter of the criminal prosecution of an impaired child. However, we reiterate that we must follow the law in this state, that defendant was sentenced to juvenile detention—not adult imprisonment, and that defendant will be released on his twenty-first birthday.

[1] If the offense committed by the juvenile is "other than a specified juvenile violation," the prosecutor may request that the court designate the case as a case in which the juvenile is to be tried in the same manner as an adult. MCL 712A.19d(2). The court may designate the case following a hearing if it determines that the best interests of the juvenile and the

Although I agree with the majority that the statute is not unconstitutional, I am disturbed by the fact that the statute does not specify any minimum age under which the prosecutor does not have unrestricted discretion to try a juvenile as an adult. A juvenile tried and convicted as an adult under subsection 2d(1) may be subject to "any sentence ... that could be imposed upon an adult convicted of the offense for which the juvenile was convicted." MCL 712A.18(n).[2] Thus, a juvenile of any age, no matter how young, who is tried and convicted as an adult of a specified juvenile violation can face up to life imprisonment without the possibility of parole.[3] While it may be unlikely for a prosecutor to try a very young child as an adult, under subsection 2d(1) a prosecutor would nonetheless have unrestricted discretion to try a child of any age as an adult. I urge the Legislature to revisit subsection 2d(1) and impose a minimum age under which a juvenile cannot be tried as an adult for a specified juvenile violation.[4]

---

public would be served by the juvenile being tried in the same manner as an adult. *Id.*

[2] In the present case, however, defendant was not sentenced as an adult.

[3] Indeed, under the plain language of the statute, a child as young as three, or four, or five years of age could be tried, convicted, and sentenced as an adult.

[4] Although this case does not involve an "offense other than a specified juvenile violation," I would also urge the Legislature to impose a minimum age for purposes of subsection 2d(2).