# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MACEO LEWIS SCOTT,

       Defendant-Appellant.

UNPUBLISHED
February 10, 2015

No. 317209
Kent Circuit Court
LC No. 12-010011-FC

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Maceo Lewis Scott, appeals as of right his convictions following a jury trial of felony murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529. We affirm.

## I. FACTS

On September 25, 2012, Amy Boyd called the police because she was concerned that her coworker, Santiago Zapata, had not come in to work for several days. Grand Rapids Police Officer Glen Brower found Zapata dead of multiple stab wounds in the basement of his home. Zapata had coached the basketball team of codefendant Timothy Jay Miller and allowed Miller to stay at his house.[1]

Officers arrested Scott and Miller on October 2, 2012. David Hayhurst, a Michigan State Police forensic scientist, testified that blood samples on the bottom of Scott's shoes tested positive for Zapata's DNA. Scott's shoes also matched bloody footprints that investigators found in the basement of Zapata's home.

Grand Rapids Police Detective Leslie Smith interviewed Scott after his arrest. During one of the interviews, Scott told Detective Smith that he and Miller went to Zapata's house because Miller knew that Zapata had money and Miller promised to give Scott some of it. Scott waited outside while Miller went into the house, but Scott later went into the house to help Miller

---

[1] Miller has also appealed his convictions.

-1-

move Zapata into the basement, where Miller stabbed Zapata several times. Miller and Scott then took the keys to Zapata's car, drove to an ATM, and attempted to use Zapata's ATM card.

The prosecutor sought to admit ten photographs of Zapata's body. The photographs showed the injuries to Zapata's torso, abdomen, face, neck, back, and hands. Defense counsel challenged admission of the photographs, contending that they were irrelevant and substantially more prejudicial than probative. The trial court admitted the photographs, ruling that they were relevant regarding Scott's intent and not more prejudicial than probative.

## II. PHOTOGRAPHIC EVIDENCE

Scott contends that the trial court denied his right to a fair trial by admitting the photographs of Zapata's injuries because the prejudicial effect of the photographs substantially outweighed their probative value. We disagree.

This Court reviews for an abuse of discretion the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion when its outcome falls outside the range of reasonable outcomes. *Id*. at 722-723. We review de novo the preliminary questions of law surrounding the admission of evidence. *Id*. at 723.

Our state and federal constitutions guarantee a defendant the right to due process of law, US Const, Am XIV; Const 1963, art 1, § 17, which requires that the defendant receive a fair trial. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). "[A]n important element of a fair trial is that a jury only consider relevant and competent evidence bearing on the issue of guilt or innocence[.]" *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993) (quotation marks and additional citations omitted).

Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable, MRE 401, but that the trial court must exclude relevant evidence if the probative value of the evidence is substantially outweighed by its prejudicial effect, MRE 403. This occurs when the evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

The trial court must weigh the probative value and prejudicial effect of gruesome photographs before admitting them. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). The mere fear of prejudice does not render evidence inadmissible. *Id*. at 75. The trial court need not "protect the jury from all evidence that is somewhat difficult to view." *Id*. at 79. The question is whether the sole purpose of the photographs is to inflame the jury:

If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the

-2-

passion or prejudice of the jurors. [*Id.* at 77 (quotation marks and citations omitted).]

In this case, the prosecutor charged Scott with armed robbery and felony murder. The elements of felony murder are (1) the killing of a person, (2) with intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. *People v Nowack*, 462 Mich 392, 401; 614 NW2d 78 (2000). A defendant's participation in a crime and presence when the victim was killed is evidence of intent. See *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Photographs may be admitted to show a defendant's intent. See *Mills*, 450 Mich at 80.

In this case, the photographs were close-up depictions of the stab wounds on Zapata's body, including wounds to Zapata's hands that Dr. David Start, a forensic pathologist, testified were defensive wounds, and wounds to Zapata's neck that Dr. Start testified were fatal. We have reviewed the photographs and are convinced that their sole purpose was not to inflame the jury. The photographs were relevant to show that Scott had the intent to commit murder. The presentations in the photograph are almost clinical. The trial court carefully considered the photographs before it determined that they were relevant and not substantially more prejudicial than probative. We are not convinced that the trial court's ruling fell outside the principled range of outcomes or denied Scott a fair trial.

## III. PROSECUTORIAL MISCONDUCT

Scott contends that the prosecutor committed misconduct by making an improper civic duty argument to the jury. We disagree.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). The prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court evaluates instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context, in light of the defendant's arguments, and in light of the evidence in the case. *Id.* at 64.

A prosecutor may not appeal to a juror's sense of civic duty because it injects issues broader than the defendant's guilt or innocence into the trial. *Bahoda*, 448 Mich at 283. An appeal for justice may be an appeal to civic duty. See *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). However, during closing statements, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case. *Bahoda*, 448 Mich at 282.

In this case, the prosecutor made the following statements during rebuttal argument:

Santiago Zapata was a good man. He tried to do good things for disadvantaged youth. The fact of the matter is this was an evil crime. This was a horrendous thing that was done to Santiago Zapata, and the person that did it is seated right there. Do not let him get away with murdering Mr. Zapata. Do not let him get away with robbing Mr. Zapata. Do Mr. Zapata justice.

The prosecutor also argued that Zapata was "brutally slaughtered."

The prosecutor presented evidence that Zapata worked in a program that helped disadvantaged middle and high school students prepare for college. Further, Zapata was stabbed more than 30 times. A reasonable inference from the evidence was that Zapata was a good man. Another reasonable inference is that the crime was brutal and evil. Finally, a review of the prosecutor's arguments in context indicate that, when the prosecutor argued that the jurors should "[d]o Mr. Zapata justice," the prosecutor was not asking the jurors to suspend their judgment and was not addressing issues broader than Scott's guilt. Rather, the prosecutor was appealing to the jurors' sense of justice because, under the prosecutor's theory, the evidence showed that Scott robbed and murdered Zapata and deserved to be convicted of those crimes.

Affirmed.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey

-4-