# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2016

Plaintiff-Appellee,

v

No. 323674
Iosco Circuit Court
LC No. 14-008429-FC

FREDRICK JOSEPH LAFRAMBOISE,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

A jury found defendant guilty of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under 13 years old), and three counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (victim under 13 years old). He was acquitted of one count of CSC I. The trial court sentenced him to 25 to 50 years' imprisonment for the CSC I convictions and 57 to 180 months' imprisonment for the CSC II convictions, all to be served concurrently. He appeals as of right, arguing that he was denied his Sixth Amendment right to confront witnesses against him because the trial court allowed the victims, who were between the ages of five and ten at trial, to testify from behind a protective screen that would prevent them from seeing defendant; and that the prosecutor committed misconduct during closing argument and trial counsel was ineffective for failing to object. We affirm.

Defendant's convictions arise out of a series of sexual assaults against three girls. Defendant was convicted of three counts of CSC II against AM, who was about to begin third grade at the time of trial. She testified that between the ages of five and eight, defendant sexually assaulted her "about 50" times with his hands, three times with his tongue, and at least once with "his one private." Defendant was convicted of one count of CSC I against KO, who was five years old at the time of trial. She testified that defendant "licked" her after she used the bathroom and also put his hand in what was identified as the front of her genital area and "clipp[ed]" her with his fingers. Defendant was convicted of one count of CSC I against GO, who was about to begin third grade at the time of trial. She testified that defendant digitally penetrated her "crotch" when she was seven-and-a-half years old. The prosecution also presented the testimony of OO, who was ten years old at the time of trial. She testified that defendant also licked her "private" while they were alone in a hunting blind together. Each of the children referred to defendant as "Papa Rick." Defendant denied sexually assaulting the

-1-

children and presented evidence criticizing the protocol followed during the investigation and bolstering defendant's character. Defendant's counsel argued that the jury should find defendant not guilty because the investigation was flawed and biased, because the children's testimony was inconsistent, and because defendant is a "good," "simple," and "honor[able]" man with "a happy life" who did not just become a pedophile "out of the blue."

Defendant's first argument is that the screen the trial court placed between him and the victims denied him his right to confront witnesses against him. We disagree. We review questions of constitutional law de novo, but we review any underlying factual findings relevant to the application of that law for clear error. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).

"[T]he right guaranteed by the Confrontation Clause ensures not only a personal examination of the witness, but also that the witness will testify under oath, that the witness will be subject to cross-examination, and that the jury will have the opportunity to observe the witness's demeanor." *Rose*, 289 Mich App at 513, citing *Maryland v Craig*, 497 US 836; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Nevertheless, "states have a compelling interest in protecting minor victims of sex crimes from further trauma and embarrassment," and that interest "may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id*. at 515 (citations omitted). "In order to warrant dispensing with face-to-face confrontation, the trial court must find that the emotional distress suffered by the child would be both caused by the presence of the defendant and more than *de minimis* distress caused by nervousness, excitement, or reluctance to testify." *Id*. at 515.

The trial court heard the testimony of Ann Marie Shay, who has a master's degree in counseling, is a limited-license therapist in Michigan, is certified as "a clinical trauma specialist" through the National Trauma Institute, and has directly worked with abused and neglected children for at least three years. Furthermore, she provided counseling to GO and OO approximately 50 times in the year before trial and observed all four girls testify during the preliminary examination. The trial court found, based on Shay's education and experience, that she was qualified to opine whether these children would be traumatized by the presence of defendant while testifying and whether that emotional distress would be more than *de minimis*. Shay did precisely that, opining that all four children would be greatly traumatized based on what she observed during the preliminary examination and based on her education and experience. The trial court found this evidence persuasive, concluding that "these small, young children are likely to suffer serious psychological . . . damage" if asked to testify without the screen. We find no clear error in the trial court making that finding.

Notably, all elements of defendant's right to confront these children remained in place. Defendant was able to see the children testify; they just could not see him. Defense counsel was able to cross-examine the children and called them for direct examination as well. The children took an oath, and the jury was able to observe each child testify. Thus, the decision to permit the children to testify with the screen in place did not violate defendant's right to confront the witnesses against him.

Defendant's primary argument on appeal is that the prosecution did not prove "the sort of particularized, out-of-the ordinary need necessary to overcome the preference for face-to-face

confrontation." To support this claim, defendant relies on out-of-context testimony by Shay regarding her education and experience. The majority of the evidentiary hearing in this matter focused on Shay's qualifications to render such an opinion, which explains why she testified about the impact on children in general *as well as* the children in this case. Moreover, the trial court found that *these* children would be traumatized without the screen present and Shay expressly testified that *these* children would be traumatized without the screen present. Consequently, we find defendant's argument unpersuasive.

Defendant next argues that he was denied his due-process rights and his right to a fair trial because the prosecutor committed prosecutorial misconduct in her rebuttal to defense counsel's closing statement. Defendant argues that the prosecutor impermissibly implied "that [defendant] lost contact with his biological children because he had sexually abused them" and "asked the jury to infer that [defendant] had molested [his girlfriend's daughter]." We disagree that the prosecutor committed misconduct.

While prosecutorial misconduct issues are ordinarily reviewed de novo, unpreserved issues are reviewed for plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. at 475-476, quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

First, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant makes no attempt to overcome this presumption on appeal. The jury was properly instructed that the arguments of the attorneys were not evidence. "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330. Any prejudice that was not alleviated by the instructions that were given could have been alleviated by an additional instruction. Regardless, the prosecutor's comments, when reviewed in context, were not improper. "When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *Id*. at 330. "[T]he propriety of a prosecutor's remarks will depend upon the particular facts of each case" and "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. "[O]therwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *Id*.

During his closing argument, defense counsel portrayed defendant as "a simple man" with "no history of nothing":

> Now think about this: This guy is 60 years old, okay, and we know that he is a simple man. He is not some engineer, he is not -- he is a simple guy, lives in a trailer up north in the woods, got a hunting dog, hunts, has got a lady friend, got pigeons in the back yard, grows gardens, he's got a happy life. I mean, really, he's got a happy life, and then all of a -- and no history of nothing. His -- the gal,

[], the girl he raised up after, you know, saving -- an act of honor, think about that. He comes outside, and this man is kicking her head in. He stops it, and says to my place, an act of honor. So he raises up these kids[]. He walks her down the aisle. She sat right there and said: I love him. This was terrible for her. Well, if she feels that strongly about that man, you think he's got that kind of evil in his heart, really?

So, common sense, we've got a simple man, a kind man, just a nice guy, . . . the grandchildren love him, . . . they all loved him, he is a good guy. And one day out of the blue he decides he is going to turn into some kind of serial pedophile, and start digitally penetrating and licking little girl's vaginas, four of them, just like that, boom, boom, boom, boom, just out of the blue. Does that make any sense? Nothing in his whole life, and all of a sudden he is going to do this kind evil like that? And you heard, his body's all screwed up. He didn't have sex with his -- what, couple of times has got to use a pill? He's got a happy life, he is an old guy, and all of a sudden he is going to be a pedophile? That doesn't make any sense. He's not sophisticated, he's not some rocket scientist. He's just a guy living up north in the woods with his hunting dog and his gal and his garden, and it doesn't make any sense, he's a peaceful guy.

Responding directly to this portion of defense counsel's closing argument, the prosecutor referenced the fact that, despite claiming to be a simple, happy, good, and honorable man, defendant had not had contact with his biological children for many years and bought his girlfriend's daughter thongs and panties for Christmas. Both of those statements were an accurate reflection of testimony presented at trial. Indeed, defendant himself admitted to both not having any relationship with his biological children and answered affirmatively when asked if he made the purchases for his girlfriend's daughter. These comments were made in direct response to defense counsel's argument that because defendant was "a simple man," he was less likely to have committed the crimes at issue. The prosecutor ended that portion of her argument by stating the following: "He wants to talk about how that he just out of the blue becomes a child molester. He got caught." Counsel claims that this statement, in and of itself, led the jury to believe that the prosecution had information indicating that defendant had sexually abused his biological children and his girlfriend's daughter. However, the prosecutor made no such connection. We find the prosecutor's statement to be within the wide latitude accorded to prosecutors when responding to defense closing arguments. *Callon*, 256 Mich App at 330.

Even if we assume that the comments constituted prosecutorial misconduct, reversal is nevertheless not warrented. In the context of prosecutorial misconduct, "reversal is not warranted [when] the alleged error was forfeited and did not result in the conviction of an actually innocent defendant, or seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence." *Callon*, 256 Mich App at 331. Defendant has not demonstrated either to be the case on appeal.

Finally, defendant argues that if the comments by the prosecutor discussed above did not constitute plain error requiring reversal, then defendant is nevertheless entitled to a new trial because defense counsel was ineffective in failing to object to those comments. We disagree. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich

-4-

App 450, 457; 678 NW2d 631 (2004).  We find that the prosecutor's commentary was not improper, so no objection would have been properly sustained.  Furthermore, counsel may not have wanted to draw more attention to the remarks by objecting, which would be a sound strategy we would not second-guess.  *People v Horn*, 279 Mich App 31, 40 n 3; 755 NW2d 212 (2008).  We find no ineffective assistance.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien