# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 29, 2016

Plaintiff-Appellee,

v

No. 321155
Wayne Circuit Court
LC No. 13-001228-FC

KONRAD DESHAWN MONTGOMERY,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 10 to 25 years each for the armed robbery and assault convictions, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We reverse defendant's convictions and remand for a new trial.

Defendant's convictions arise from the December 11, 2012 robbery of LaVince Marks, Jr., who was shot during the offense. Marks testified that he arrived at his home in Detroit at approximately 6:30 p.m., when it was dark outside. A male wearing a hooded jacket approached him with a gun, pointed the gun at him, and threatened to shoot him in the head if he made a sound. As instructed, Marks gave the man his money, just over $400, and his cell phone, an iPhone 4s. The gunman then directed Marks to the side of Marks's truck, alongside a vacant house, and instructed Marks to get down on his knees and face the vacant house. Believing he was going to be shot, Marks grabbed the gun with one hand and the gunman with his other hand. The two men struggled, and Marks was shot twice during the struggle. After the gunman obtained control over the gun, he shot Marks a third time before running away and fleeing in a vehicle. Approximately two weeks after the offense, Marks viewed a photographic array and identified defendant as the gunman.

The police had focused on defendant as a suspect after Marks's son was able to track Marks's iPhone with a program on his phone. On December 13, 2012, Marks's son learned that the cell phone was at a location in Southfield. Southfield police learned that the phone was purchased by Ali Bazzi, who owned a Metro PCS store. Bazzi informed the police that defendant, who sold telephones to Bazzi in the past, sold him Marks's phone. At trial, Bazzi

-1-

believed that he purchased the phone from defendant between 6:00 p.m. and 8:00 p.m. on December 12, 2012, but defendant testified that he sold the iPhone to Bazzi on December 13, 2012.

Defendant testified at trial that he supported himself by buying and reselling used electronic equipment, and claimed that he purchased Marks's phone on December 12, 2012 in a transaction arranged by acquaintances. Defendant testified that he was at a gentlemen's club in another area of Detroit at the time of the offense. The defense called several witnesses who supported defendant's testimony regarding his whereabouts at the time of the offense, and who supported his testimony regarding his purchase of the iPhone from a woman named Sherell Lewis. At trial, the parties also stipulated to the admission of defendant's and Marks's cell phone records for the relevant period. They also stipulated to an analysis of those records by Inspector John Jaehnig, who was unavailable to testify at trial. According to the stipulation, at the time of the robbery, defendant's cell phone was active in the area of I-75 and McNichols, and was not active in the area where the victim resided on the eastside of Detroit. During deliberations, the jury asked for guidance on the meaning of "routed calls" as indicated in the telephone records. With the approval of the parties, the trial court read a definition of that term as contained in the records. The jury thereafter convicted defendant as charged.

After defendant filed his claim of appeal, this Court granted defendant's motion to remand to allow defendant to file a motion for a new trial based on ineffective assistance of counsel. Defendant argued that trial counsel was ineffective for not moving for the appointment of expert witnesses regarding cell phone technology and eyewitness identification, and for not calling Lewis as a witness at trial. At an evidentiary hearing, defendant presented extensive expert testimony in the areas of cell phone technology and eyewitness identifications. He also called Lewis, who stated that she acquired Marks's phone from her brother and sold it to defendant.

Defendant now argues, and we agree, that reversal is required because of misstatements by the prosecutor during his closing argument pertaining to the telephone records and inferences that could be drawn from those records.

Although defendant objected to some of the challenged arguments, thereby preserving these claims, he did not object to most of the challenged remarks, leaving those claims unpreserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) ("In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction."). This Court reviews preserved issues of prosecutorial misconduct de novo to determine if the defendant was denied a fair and impartial trial. *Id*. An unpreserved issue of prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). "Reversal . . . is warranted only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 274-275.

Claims of prosecutorial misconduct are decided case-by-case, and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial.

*People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude during closing argument. *Id.* at 282. The prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his theory of the case. *Id.* However, "[a] prosecutor may not make a statement of fact to the jury that is unsupported by evidence . . . ." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). The prosecutor "may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008).

As indicated previously, Inspector Jaehnig performed an evaluation of the telephone records, but did not testify at trial. Instead, the parties entered into a stipulation regarding Inspector Jaehnig's analysis of the cell phone and cell tower records. They stipulated that if called as a witness, Inspector Jaehnig would testify that between the hours of 6:00 p.m. and 7:00 p.m. on the night of the offense, defendant's cell phone "was active in the general area of I-75 and McNichols Road, also known as Six Mile, in the City of Detroit" and "was not active in the area of [the victim's address] at the time of the offense."

During closing and rebuttal arguments, the prosecutor addressed the significance of the cell phone records and argued that they did not eliminate defendant as a suspect in the commission of the charged offense. The prosecutor asserted that defendant was "pretty savvy when it comes to telephones" and indicated that it was possible that he left his cell phone at the gentlemen's club, where he was a frequent customer and had many friends, or had his calls either forwarded to another phone or sent directly to voice mail to make it appear that he was at one location when he was actually committing the crime at a different location. Because there was no objection to this argument, review is limited to plain error affecting defendant's substantial rights. See *Abraham*, 256 Mich App at 274.

In addition, the prosecutor argued during rebuttal that the defense witnesses, including defendant, were not credible because they lied about when defendant sold the phone to Bazzi in Southfield. In support of this argument, the prosecutor again relied on the phone records to argue that defendant's phone was active and connected to cell tower 304, near the location of Bazzi's business, on December 12, 2012, as Bazzi testified, not the next morning, as defendant claimed. Defendant preserved his challenge to these latter remarks with an appropriate objection at trial. See *Bennett*, 290 Mich App at 475.

The parties' stipulation about the results of Inspector Jaehnig's cell tower analysis established that, at the time of the offense, defendant's phone was active near the gentlemen's club, consistent with what defendant and his witnesses testified, and was not active in the area where the victim was robbed. The stipulation did not address anything about voice mail usage or forwarding of calls to another phone. A critical aspect of the prosecution's theory of the case was explaining why the telephone records did not eliminate defendant as the person who committed the robbery, despite the fact that they showed activity on his phone in an area away from the crime scene at the time of the offense. The prosecutor advanced as one possibility that defendant could have set up his phone at one location to forward calls to another location, thereby enabling him to rob the victim at one location while making it look like he was at a different location. However, this argument was not supported by the parties' stipulation, or any other evidence presented at trial. Indeed, the argument not only lacked record support, but defendant presented expert testimony at the post trial evidentiary hearing that indicated that the

-3-

prosecutor's argument was factually incorrect. The prosecutor should have confined his argument to the parties' stipulation, which did not address voice mail usage or forwarding of calls, and thus did not support the argument that defendant could have used call forwarding or voice mail to enable him to commit the crime at one location, yet have his cell phone activity register to a different location. Because the prosecutor's argument exceeded the scope of the parties' stipulation and was not supported by any evidence, the prosecutor's statements were improper.

We also conclude that the prosecutor's improper argument affected defendant's substantial rights. In order for an error to affect substantial rights, it must be outcome determinative. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is outcome determinative if it undermines the reliability of the jury's verdict. *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001). The telephone records were an essential component of defendant's defense. Although defendant presented witnesses who also supported the defense theory that defendant was not the person who robbed the victim, the prosecutor was able to argue that inconsistencies in the witness testimony showed that the witnesses were not credible. That made the telephone records even more important to the defense, because the records were objective, independent evidence that corroborated the defense witnesses' testimony about defendant's telephone calls and whereabouts, and placed defendant at a location other than the crime scene at the time of the offense. The prosecutor's improper argument gave the jury a reason to ignore that crucial evidence. Moreover, the argument not only lacked factual support, but according to the unrefuted expert testimony at the evidentiary hearing, it was factually incorrect.

It is apparent that the jury focused on the telephone records because it sought assistance in understanding them during deliberations, when it asked for assistance from the court to determine the meaning of a routed call. The jury's question strongly suggests that its inquiry was directed at the prosecutor's improper call-forwarding theory. Moreover, it is doubtful that the trial court's handling of the jury's question served to clarify the matter for the jury. The court relied on a definition of "routed call" that was included in the cell phone records, but defendant's expert explained that the records were difficult for a layperson to understand, and he did not believe that the jury instructions were sufficient to explain what is meant by a "routed call."

Because the prosecutor's improper argument pertained to an essential component of defendant's defense, and it appears that the argument was not only unsupported, but also factually incorrect, and that this subject area was also a focus of the jury's deliberations, we conclude that the plain error undermines the reliability of the jury's verdict and, therefore, affects defendant's substantial rights. Furthermore, reversal is appropriate because the telephone records support defendant's claim that he is actually innocent. See *Carines*, 460 Mich at 763.

Defendant's expert also established that the prosecutor incorrectly argued that defendant's telephone had been active at cell tower 304 at the time Bazzi believed defendant sold him the telephone, when the records showed that defendant's telephone did not connect to that tower and that he was in another area. It appears that the prosecutor confused "NEID 304" with tower 304 in the records to argue that the records established defendant's presence near Bazzi's gas station on December 12, 2012. According to defendant's expert, NEID 304 had nothing to

do with tower 304. The prosecutor used that argument to further question the credibility of defendant's testimony, as well as the testimony of the defense witnesses, that defendant did not sell the phone until the next day. This error, combined with the prosecutor's improper call-forwarding argument, further supports reversal of defendant's convictions.[1]

Accordingly, we reverse defendant's convictions and remand for a new trial. In light of this decision, we do not address defendant's additional arguments regarding the effective assistance of defense counsel.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens

---

[1] Defendant also argues that there was no evidence to support the prosecutor's argument regarding whether Marks's phone was active on December 12. However, this argument was supported by the testimony of Marks's son, who testified that he began tracking Marks's phone after the robbery on December 11, 2012, but did not notice any activity until December 13, 2012. The prosecutor's argument was linked to that testimony and, therefore, was not improper.