*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BENJAMIN ANDREW BURKLOW,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 339590
Wexford Circuit Court
LC No. 2017-011810-FC

Before: BORRELLO, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration of a victim less than 13 years of age by a defendant 17 years of age or older), and one count of indecent exposure, MCL 750.335a. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to serve concurrent prison terms of 25 to 40 years for each CSC-I conviction and 365 days for indecent exposure, with credit for 222 days served. Defendant appeals by right. For the reasons set forth in this opinion, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant, a 32 year old male, is alleged to have committed these offenses on an 11 year-old boy. At the time of the reported incidents, the victim's parents were divorced and defendant, the brother of the victim's father's fiancé, was sharing a home with his sister and the victim's father. The victim would visit his father along with the victim's 13 year-old stepbrother every other weekend and every other week during the summers. The two minors occupied the same bedroom at the father's house. Testimony revealed that defendant would often get off work and spend time playing video games or watching TV with the minors when they visited. This typically occurred in the minors' bedroom. Defendant showed more affection for the victim than the stepbrother or the other children living in the house. Defendant began spending late nights in the minors' bedroom, and as the victim sometimes spent time in defendant's bedroom as well. Sometime after August 2016, defendant began engaging in criminal sexual conduct with the victim. The victim described at least two acts. In addition, defendant once exposed himself to

-1-

the victim when they were at the YMCA. The stepbrother testified that on one occasion, he woke up during the night in the bedroom that he shared with the victim and saw defendant "laying almost over top of [the victim]." He also heard underwear snapping.

Sometime after the stepbrother heard the underwear snapping, he asked the victim "what's going on," and the victim told him about defendant's conduct. The two children informed the parents, who went to the police.

While cleaning, a document was found which was penned by defendant wherein he wrote to the victim in effusive prose about how much he cared for the victim. The letter was read in the prosecutor's opening statement and referred to throughout the trial by prosecution witnesses.

Defendant alleged that the allegations were false and were done at the behest of the older stepbrother who (1) "unsettled by the prospect[sic] of [defendant] being gay," and (2) was jealous about the attention defendant gave to his stepbrother, both of which caused the stepbrother to fabricate a story about defendant that he then persuaded the victim to repeat. As noted above, defendant was charged with two counts of CSC-I and one count of indecent exposure. A jury found defendant guilty of all counts and sentenced as previously noted. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant first asserts that prosecutor committed misconduct by a variety of means. First, defendant argues that when the prosecutor read the letter written by defendant to the jury during opening statements, the prosecutor engaged in misconduct such that defendant was denied a fair trial. Defendant further argues that trial counsel was ineffective for failing to object to letter being admitted by the trial court as evidence. Defendant also argues that the prosecutor committed misconduct by improperly eliciting testimony regarding a prior arrest of defendant. Defendant additionally argues that the prosecutor committed misconduct by impermissibly vouching for the credibility of his witnesses and by arguing facts which were not admitted into evidence. Next, defendant argues that some of the evidence complained of on appeal should have been excluded at trial. Lastly, defendant argues that the jury was exposed to extraneous information during deliberations, and that his trial counsel was ineffective. This Court examines each of defendant's claims of error.

### A. PROSECUTORIAL MISCONDUCT, ADMISSION OF EVIDENCE AND INEFFECTIVE ASSISTANCE

1. The letter.

"Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, defendant failed to preserve this issue for appeal, and we review unpreserved claims of misconduct "for outcome-determinative, plain error." *People v Seals*, 285 Mich App 1, 21-22; 776 NW2d 314 (2009). This Court will reverse "only when the plain error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 22, citing *People v Carines*, 460

Mich 750, 764-767; 597 NW2d 130 (1999). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *Abraham*, 256 Mich App at 272. Prosecutorial misconduct must be examined on a case by case basis. *Id*. This Court must review the relevant part of the record and evaluate a prosecutor's statements in context. *Id*. at 272-273.

In this case, defendant argues that the prosecutor engaged in misconduct when, in his opening and closing remarks, he read the letter authored by defendant that was found under his mattress. Defendant additionally claims the letter was inadmissible under MRE 403. As previously alluded to, in the letter, defendant expresses his feelings for the victim, which were characterized by both parties as somewhat unusual given the difference in ages between defendant and the victim.

We first examine the issue of the letter's admissibility. Because defendant did not object to admission of the letter, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Relevant evidence is generally admissible. MRE 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "In this context, prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Rather, "[u]nfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Our Supreme Court recently stated:

> The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018).]

Weighing the *Sharpe* factors, the letter's probative value was not outweighed by the risk of unfair prejudice. It was directly probative of defendant's guilt. Its language was evidence of defendant's feelings for the victim, which appear to have been romantic, with overtones of a physical and sexual relationship. In fact, the verbiage of the letter was aptly described by defense counsel as "bizarre." Additionally, the letter was not cumulative because there was no other documentation lending the same insight into defendant's state of mind. Furthermore, the prosecution needed the letter to prove that defendant had an unhealthy relationship with the child, and there was no other viable alternative way to effectively prove this to the jury. Finally, there was little risk that this letter would mislead the jury. Therefore, based on the factors set forth by our Supreme Court in *Sharpe*, 502 Mich at 331-332, the letter was admissible. Hence,

because a prosecutor may, in their opening statement, remark on an overview of the evidence that will be provided during the trial, *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010), and because the letter was admissible, we cannot find the prosecutor committed misconduct by referring to an admissible piece of evidence.

Additionally, because the letter was admissible, defense counsel was not ineffective in failing to move for its exclusion. Trial counsel had no duty to raise a meritless or futile objection. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Further, trial counsel was not ineffective for referring to the letter as "bizarre" in his closing remarks. In closing, the prosecutor focused heavily on the letter and how it evidenced an unhealthy relationship between defendant and the victim. To counter the prosecutor's attacks, trial counsel acknowledged that the relationship was unusual and "unorthodox. There's too much affection . . . for our societal norm, to be sure." Trial counsel then said that defendant's explanation was arguably bizarre, but that it did not "by itself, make [defendant] a criminal. It does not necessarily mean that he did these things that he's alleged to have done." Rather than try to ignore the unusual nature of the letter, trial counsel attempted to mitigate the effect by reminding the jury that defendant was not on trial for an unusual relationship. He was on trial for CSC-I, and the jury could not find him guilty merely because of an unusual relationship. Examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and there is a "strong presumption" that counsel's actions came from "sound trial strategy," *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy . . ." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Accordingly, trial counsel was not ineffective for choosing to acknowledge the note/letter's characteristics.

2. Prior bad acts.

Next, defendant argues that the prosecutor committed misconduct by eliciting improper testimony from a witness regarding defendant's prior arrest. However, in reviewing the record, we cannot conclude that the prosecutor intended to elicit this testimony. The prosecutor followed up on a line of questioning that trial counsel himself had engaged in, and, much to the chagrin of all involved, the witness stated that her children had previously witnessed defendant be arrested. We do not see how the prosecutor could have known that his good faith effort to follow up would lead to the impermissible testimony. Good faith efforts cannot constitute misconduct. See *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Furthermore, trial counsel immediately objected, the trial court sustained the objection, and an instruction was given after the trial instructing the jury not to consider excluded evidence. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Given the exclusion of this testimony, we have no need to address defendant's additional arguments concerning the admissibility of the testimony. Moreover, given that counsel successfully objected, there is no basis for a finding of ineffective assistance of counsel. Further, trial counsel had no reason to anticipate that this evidence would be presented and thus, there is no basis for defendant's assertion on appeal that counsel should have moved in limine to exclude it.

3. Improper vouching.

-4-

Next, defendant argues that the prosecutor improperly vouched for the credibility of his witnesses. It is well-established that:

> a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness. But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes. [*People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). (internal citations omitted).]

Furthermore, it is improper for a prosecutor to ask a witness to testify about the credibility of another witness. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). In this case, the prosecutor asked the fiancé whether the victim was a truthful child. This amounted to improper vouching and constituted prosecutorial misconduct. *Dobek*, 274 Mich App at 71. The issue then becomes whether the prosecutor's misconduct requires reversal of defendant's convictions and a new trial.

As soon as the question was asked of the fiancé whether the victim was a truthful child, defense counsel objected. The trial court sustained this objection and instructed the jury to not consider the excluded evidence. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *Mahone*, 294 Mich App at 212. Accordingly, we must find such error harmless.

Defendant also objects, on the basis that such inquiry constituted improper vouching, to a line of questioning wherein the prosecutor elicited from the victim that it is better to tell the truth than to lie. This Court, in *People v Schutte*, 240 Mich App 713, 720-721; 613 NW2d 370 (2000), overruled on other grounds *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), held that a prosecutor's questions did not amount to misconduct calling for reversal because the defense had attacked the victim's credibility by claiming that the victim's mother had caused the victim to fabricate the story. That is virtually the same set of facts presented here. On cross-examination defense counsel put forward his theory that the older stepbrother had fabricated a story about defendant because, among other reasons, he had a disdain for gay people. The same line was inquiry was pursued with other prosecution witnesses. Clearly, defendant was attacking the credibility of the victim and putting forth a theory that he fabricated his accusations to appease his step-brother or because he knew the defendant was gay. As a consequence, we cannot conclude that the prosecutor, by pursing this line of questioning alluded to any special knowledge as to why the victim was telling truth. *Thomas*, 260 Mich App at 455. No error is assigned, and defendant is not entitled to relief.

4. Mischaracterization of Evidence.

Defendant also takes issue with the prosecutor's remark during rebuttal in which the prosecutor used the word "grooming." Defendant suggests that in using this word the prosecutor mischaracterized the evidence or that the statement was unsupported by the evidence. Defendant additionally makes a conclusory argument that an expert witness needed to testify as to what "grooming" meant. "A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence in the case." *People v Steanhouse*, 313 Mich App 1, 36; 880 NW2d

297 (2015), rev'd in part on other grounds by *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (quotation marks and citation omitted). However, the prosecutor did not advance a new theory unsupported by the evidence or one that an expert needed to clarify. The prosecutor's statements merely advanced his theory that defendant had "prepared" or "groomed" the victim for the offenses that were eventually committed. The evidence at trial supported each of the prosecutor's statements, and no mischaracterization occurred. Hence, defendant is not entitled to relief.

## B. EXTRANEOUS INFORMATION

Defendant next argues that the jury was improperly exposed to extraneous information in the form of a Facebook post that defendant authored. According to defendant, even though this Facebook post was never admitted into evidence, the trial court granted the jury's request to see it during its deliberations. Whether a jury was exposed to extraneous information has a constitutional implication, see *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997), and constitutional questions are ordinarily reviewed de novo, *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). However, defendant failed to preserve this issue for appeal, and we review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"A defendant tried by jury has a right to a fair and impartial jury." *Budzyn*, 456 Mich at 88. "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*. To show that a jury improperly considered extraneous facts and that reversal is warranted, the defendant must show that: (1) "the jury was exposed to extraneous influences," and (2) "these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Id*. at 88-89. For the second of these elements, the defendant typically "will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id*. at 89. "[I]n determining whether the extrinsic influence created a real and substantial possibility of prejudice," factors that this Court may consider include:

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Id*. at 89 n 11 (quotation marks and citation omitted).]

The burden to show these two elements rests with the defendant. *Id*. at 89. Once a defendant meets the burden, the burden shifts to the prosecution, which must show that the error was harmless beyond a reasonable doubt. *Id*. Harmless error may be shown "by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming." *Id*. at 89-90

In the present case, trial counsel failed to object to the trial court's course of action; in fact, the trial court twice asked trial counsel if he had any objection to giving the jury what it requested, and trial counsel stated that he had no objection. Trial counsel acquiesced to the trial court's actions. "A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court. To hold otherwise would allow defendant to harbor error as an appellate parachute." *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) (internal citation omitted). Furthermore, on the merits, defendant's claim does not warrant reversal. Assuming that the jury was exposed to extraneous information, defendant fails to "demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Budzyn*, 456 Mich at 89.

During trial, the prosecution had used a Facebook post to impeach defendant's testimony, specifically calling into question whether he had referred to the victim's step-brother as "a little ass***." While the Facebook post may have cast defendant in an unflattering light, we are not convinced that it was material or directly connected to the verdict. Defendant notes only that it was extraneous information, and fails to advance any substantive analysis connecting it to the verdict. Further, based on those portions that we can glean from the trial court record, the post was not severely inflammatory or highly prejudicial evidence. As stated before, it merely cast defendant in a somewhat less than ideal light in that he called a 13-year-old child, "a little ass****." There is little, if any basis for asserting that this would have influenced the jury so as to affect the outcome, especially given the other evidence available to them. Hence, defendant has failed his burden to show that the post was "substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Budzyn*, 456 Mich at 89.

Moreover, in our analysis we presume that the jury received and considered the Facebook post. Hence, defendant is not entitled to a remand to inquire whether the jury actually received the Facebook post because we have addressed the issue on its merits presuming that the jury had received and considered the complained of evidence. Accordingly, defendant is not entitled to any relief on this issue.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan