*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES LEE MCNEIL,

Defendant-Appellant.

UNPUBLISHED
January 27, 2022

No. 352262
Cass Circuit Court
LC No. 18-010223-FC

Before: RONAYNE KRAUSE, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant, James Lee McNeil, was convicted by a jury of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age). Defendant was sentenced to serve three concurrent terms of 25 to 60 years' imprisonment. We affirm.

## I. BACKGROUND

Defendant was alleged to have sexually abused the victim from the time that she was five to nine years old. The sexual assaults occurred between 1992 and 1995 when defendant, who is related to the victim's stepmother, babysat the victim at his home in Dowagiac, Michigan. In 2017, the victim reported the sexual abuse, and defendant was charged with three counts of CSC-I. At trial, the victim and several other witnesses testified that they had been sexually assaulted by defendant. Numerous other witnesses testified that defendant frequently had young girls over at his house. Defendant testified in his own defense. Defendant denied having sexually assaulted anyone and claimed that he never had any girls at his house other than his two stepchildren. As defense counsel explained during closing argument, he had "no doubt . . . that somebody has done something to [the victim], but I don't believe it's [defendant]." Defendant was convicted as charged and sentenced as described above. This appeal followed.

## II. EXPERT TESTIMONY

Defendant argues that defense counsel was ineffective because counsel elicited testimony from an expert witness that was "misleading" and "prejudicial" and "that did not meet MRE 702's relevancy and reliability requirements[.]" Defendant also argues that defense counsel's

questioning "opened the door" for the prosecutor to elicit further inappropriate testimony that bolstered the victim's credibility.[1] We conclude that counsel was not ineffective.

## A. STANDARD OF REVIEW

Defendant failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial, and this Court denied defendant's motion for remand to the trial court for a *Ginther*[2] hearing.[3] "Therefore, our review is for errors apparent on the record." See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Nevertheless, we are not precluded from revisiting an earlier denial of a motion to remand after plenary review. See *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044); slip op at p 10.

In order to obtain a new trial on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks and citation omitted). A defendant who claims to have been denied the effective assistance of counsel bears a heavy burden to overcome the presumption of effective assistance, *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018), and sound trial strategy, *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). "A trial strategy is not ineffective simply because it ultimately does not succeed. A strategy is also not ineffective because it entails taking calculated risks, especially if the range of available options for the defense is meager." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (citations omitted).

## B. ANALYSIS

"The trial court has an obligation under MRE 702 to ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and citation omitted). Under MRE 702, when admitting expert testimony, trial courts must determine whether "the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), our Supreme Court limited expert witness testimony in child sexual abuse cases: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an

---

[1] Defendant does not argue that the trial court improperly admitted the evidence.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v McNeil*, unpublished order of the Court of Appeals, entered February 10, 2021 (Docket No. 352262).

expert may not testify whether the defendant is guilty." However, the *Peterson* Court clarified that an expert witness may testify: (1) "in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim," and (2) regarding "the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353. Our Supreme Court explained that expert testimony regarding the percentage rate at which children lie about sexual abuse improperly vouches for the credibility of the child victim. *Id*. at 375-376.

In *People v Thorpe*, 504 Mich 230, 254; 934 NW2d 693 (2019), our Supreme Court explained that experts in child sexual abuse cases may be questioned about whether children lie to or manipulate others because such questions elicit testimony regarding "discrete, straightforward, and uncontroversial questions of fact." However, the Court reiterated the principle expressed in *Peterson* that the prosecution may not elicit expert testimony regarding the percentage rate of children who lie about child sexual abuse because such testimony improperly vouches for the veracity of the victim. *Id*. at 259-260. On the other hand, if the defense questions an expert witness "about the frequency of with which children lie" about sexual abuse, the defense "open[s] the door" to a similar line of questioning on redirect examination. See *id*. at 253-254.

In this case, the trial court qualified Mary Gillespie, over defendant's objection, as an expert in the area of "child sexual abuse and behavior" on the basis of her education and extensive experience. During the prosecutor's case-in-chief, Gillespie testified about the general characteristics of children who are sexually abused.[4] The following exchange took place between Gillespie and defense counsel during cross-examination:

> *Q*. Okay. Have you ever dealt with a victim that had made fraudulent claims of sexual abuse?
>
> *A*. Yes.
>
> *Q*. Okay. How often does that happen?
>
> *A*. Not very often, but it's—I'd say it's uncommon, but it happens.
>
> *Q*. Okay. When it does occur, what are the reasons why they make those claims?
>
> *A*. A long time ago it was—the most cases that I would run across were custody cases where one parent is trying to get custody of the child and will coerce the child into saying something sexual happened with the other parent. Sometimes it's a child covering for something else that they've done and so they will make up

---

[4] Gillespie also explained that sex offenders of children sometimes engage in grooming behavior of their victims.

a sexual abuse allegation, kind of a red herring, to get people not to be upset over whatever the thing is they think is so important, so they'll lie about sexual abuse.

> *Q.* Have you ever dealt with a fraudulent claim here, and again, this is just speculation, it's—but a hypothetical, if you will. Have you ever seen where a child has been a victim of a sexual crime and they've accused another individual that was not the true perpetrator?
>
> *A.* Again, I have seen that. It is uncommon and it's not that they mixed someone up, it's that they're trying to protect the true abuser because the true abuser is somebody they're close to, or more afraid of, or had been threatened by someone like—
>
> *Q.* So it could be a father or a (sic) uncle sometimes?
>
> *A.* Anyone, yeah.
>
> *Q.* But it does occur?
>
> *A.* It does occur.

Gillespie noted that "children generally have some kind of positive relationship with the person molesting them[.]" During redirect examination, the following line of questioning occurred:

> *Q.* But again, just to clarify, that's an uncommon situation?
>
> *A.* Yes.
>
> *Q.* Would you say it's very uncommon? I guess uncommon speaks for itself?
>
> *A.* Children lie. I mean, if you look at hundreds of children that you see, I—you know, I wish I could give you numbers, but I can't. It's—it's very uncommon. Children—the—the time that children tell the lie the most—a lie the most is when they recant. They'll say something that happened, oh my God, the family blows up, and so then they'll take it back. No, it didn't happen, I—you know, I lied; no, I didn't even say that, that sort of thing.

The trial court then asked Gillespie about why a child might accuse someone other than their real abuser. In response, Gillespie acknowledged that children sometimes make false accusations of sexual assault in order to protect the abuser, particularly when the victim and the abuser have a close relationship.

Defendant claims that defense counsel's cross-examination of Gillespie was so "unhelpful, unreliable, and prejudicial" to defendant's case that it deprived him of his Sixth Amendment right to counsel. However, defendant fails to acknowledge that his attorney obtained several useful concessions from Gillespie that, although rare, children do lie about sexual abuse and sometimes

even intentionally misidentify their abuser. Defense counsel used these concessions his during closing argument to support his theory that the victim's allegations against defendant were false. However, we also acknowledge that defense counsel's question about *how often* children make false claims led to an answer that undermined defendant's theory of victim fabrication. Nevertheless, on the whole, defense counsel had a sound, strategic reason for asking the now-challenged questions in order to support defendant's theory. In addition to the question being a component of an overall strategy that required establishing that children do lie, counsel would have likely expected the jury to inevitably learn that such false claims are uncommon. Even viewing the question in isolation, counsel could reasonably have concluded that it would be better if the jury heard it on cross-examination, where counsel had a greater modicum of control than on redirect. Therefore, we conclude that defense counsel's decision was based on sound trial strategy, particularly considering the wide latitude permitted to trial attorneys. See *White*, 331 Mich App at 149.

Additionally, even if we were to conclude that defense counsel's performance fell below an objective standard of reasonableness, we would not conclude that, but for said deficiency, there is a reasonable probability that the outcome of the proceedings would have been different. As discussed, defendant's theory of the case was not that the victim had not been sexually abused; rather, defendant's theory of the case was that he was not the abuser. Indeed, well beyond just a general denial, defendant's theory was that he *could not* have been the abuser because there were never any girls in his house. Defendant asserted, in several different ways, that even if they had been at his house, the testimony of the victims was essentially impossible because, for example, his shower was simply too small for more than one person to fit. However, multiple witnesses, whose credibility are unrelated to Gillespie's testimony, provided corroborating testimony that the victim went to defendant's home when she was a child and that defendant babysat the victim without other adults being present. This evidence seriously undermines defendant's claim that he did not assault the victim because she was never at his home and he never had the opportunity.

Furthermore, according to the victim's father, defendant told him that underage "girls" were "throwing" themselves at him and that he was not opposed to having sexual intercourse with an underage female. Importantly, the victim's sister testified that she witnessed defendant perform oral sex on the victim on the floor of defendant's living room. Testimony also supported that the victim initially reported the sexual abuse when she was nine or 10 years old and that her mother obtained a court order, which required defendant to "stay away" from the victim and the victim's sister. Thereafter, the victim stopped going to defendant's home. The victim's stepmother testified that the victim was "more emotional" and did not want to go anywhere after the victim reported the abuse. The victim testified that she confronted defendant about the sexual abuse when she was an adult. According to the victim, defendant initially indicated that "he didn't want to deal with it[.]" However, after the victim pressed defendant, he stated "If I did it, I'm sorry." Defendant even admitted as much on cross-examination:

> *Q*. And you told her you don't remember if you molested her but . . . if you did, you're sorry?
>
> *A*. Yeah. If I did, I don't remember.
>
> *Q*. Okay. But you're not really sorry, are you?

*A.* I don't even remember a lot of things I said nowadays—back then.

*Q.* Okay. So, now—now you don't remember things?

*A.* I worked (inaudible) remember that. I forgot a lot of things.

\* \* \*

*Q.* But you told her if you did molest her, you don't remember it and you were sorry?

*A.* Yeah, if I did, I don't remember it 'cause I told you, they wasn't (sic) at my house.

Although the testimony of a victim need not be corroborated in prosecutions for criminal sexual conduct, MCL 750.520h, this case does not present a "true credibility contest." Cf. *Thorpe*, 504 Mich at 260. We also observe that, in addition to defendant relying in part on Gillespie's testimony during closing argument, the prosecutor only referenced Gillespie's testimony regarding grooming and otherwise argued that the witnesses had no reason to lie in this matter. In sum, given the extensive evidence of defendant's guilt, the fact that defendant's claim of impossibility was seriously undermined for reasons wholly unrelated to Gillespie's testimony, and the lack of any further reference to Gillespie's testimony that it was uncommon for children to lie about abuse, there is not a reasonable probability that the outcome of the proceedings would have been different.

## III. PROSECUTORIAL ERROR

Defendant next argues that he was denied his right to a fair trial because the prosecutor vouched for the veracity of the victim's allegations by eliciting testimony about the victim's character for truthfulness. Defendant alternatively argues that defense counsel was ineffective for failing to object to the prosecutor's questioning. We agree that plain error occurred, but under the circumstances, we disagree that defendant is entitled to a new trial.

Because defense counsel did not object to the prosecutor's questions and request a curative instruction, the issue is unpreserved. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Unpreserved issues regarding prosecutorial error are reviewed "for outcome-determinative, plain error." *Id.* "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; second alteration in original). A defendant "bears the burden of persuasion with respect to prejudice." *Id.* at 763.

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Dobek*, 274 Mich App at 63-64.

It is a "well-established principle that it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citation omitted). Indeed, "it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story[.]" *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (quotation marks and citation omitted). "[C]omments [on an individual's credibility] have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Id*. (quotation marks and citations omitted).

However, MRE 608(a) provides an exception. MRE 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Thus, when a victim's character for truthfulness has been attacked, the prosecution may elicit testimony of the victim's character for truthfulness under MRE 608(a). *People v Lukity*, 460 Mich 484, 489; 596 NW2d 607 (1999).

In this case, the victim's stepmother testified on the first day of trial and prior to the victim. The victim's stepmother testified that, when the victim was nine or 10 years old, she reported that she had been sexually abused by defendant. Later, the victim's stepmother testified that she had learned of defendant's abuse of the victim two years before the trial. On cross-examination, defense counsel questioned the victim's stepmother about this inconsistency. Defense counsel went on to ask the victim's stepmother whether she had indicated to defendant's sister that she did not have knowledge of defendant sexually assaulting the victim. Defense counsel then asked whether the victim's stepmother had ever made the statement that defendant "did not touch" the victim. The victim's stepmother denied making both statements. Finally, on redirect, the prosecution asked the victim's stepmother, "Do you believe [the victim] when she says that she was molested by the Defendant?" The victim's stepmother answered "Yes."

At the time the prosecutor asked this question, defense counsel had not directly challenged the victim's character for truthfulness. Consequently, it was improper for the prosecutor to elicit such testimony from the victim's stepmother. Accordingly, plain error occurred. Because defendant has established plain error, we must determine whether the jury convicted an actually innocent person, or whether the plain error affected the judicial proceedings' fairness, integrity, or public reputation independent of his innocence. See *Carines*, 460 Mich at 763-764. For the reasons already discussed, we conclude that the jury did not convict an actually innocent

defendant. Indeed, the evidence against defendant was overwhelming. Moreover, the trial court instructed the jury that it alone was to determine the facts and credibility of the witnesses, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, defendant has failed to establish plain error affecting his substantial rights.

Defendant also argues that defense counsel was ineffective for failing to object when the prosecutor asked the victim's stepmother to comment on the victim's credibility. However, the reference to the victim's credibility was brief. This Court has recognized that declining to raise objections may be consistent with sound trial strategy, especially to avoid drawing the jury's attention to unfavorable evidence. *Unger*, 278 Mich App at 241-243. Defense counsel may have reasonably believed that this was one of those situations.

Furthermore, even if the brief reference concerning the victim did bolster her credibility, the record nonetheless establishes that the victim's stepmother was informed of the abuse many years before defendant was criminally charged and that she did not report the matter to law enforcement. Indeed, the victim testified that her stepmother did not believe her when she reported the abuse when she was an adolescent. The victim testified that her stepmother indicated that the victim was "tryin' to get attention." The victim also testified that, although she reported the abuse to a therapist when she was 14 or 15 years old, "[n]othing came about." This evidence tends to support that the victim's stepmother and her therapist did not believe the victim. Therefore, we fail to see how the brief testimony concerning the victim's credibility affected the outcome of the proceeding. Moreover, defense counsel took advantage of the discrepancies in the stepmother's testimony during closing argument. In any event, for the reasons already discussed, we disagree with defendant that this case involved a "pure credibility contest." Defendant's ineffective assistance of counsel claim therefore fails.

IV. OTHER-ACTS EVIDENCE

A. NOTICE

Defendant next argues that evidence concerning his sexual assaults of the victim's sister and two other individuals should not have been admitted because the prosecution failed to provide notice that those witnesses would testify about other-acts evidence through their testimony as required under MCL 768.27a. Because defendant did not argue before the trial court that he had not been provided with notice that certain witnesses would be testifying, the argument is unpreserved.

MCL 768.27a(1) provides, in pertinent part, as follows:

> If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Thus, MCL 768.27a does not require placing notice on the record. Instead, the statute requires that the prosecuting attorney "disclose the evidence to the defendant at least 15 days before . . . the date of trial." There is no indication in the record that defense counsel was not provided notice well in advance of trial. Further, the witnesses who provided testimony concerning defendant's other acts were listed on the prosecutor's October 18, 2018 witness list, and trial was later adjourned to December 2019 so that defense counsel could review over 1,000 pages of police reports concerning at least some of these witnesses.

Importantly, although defense counsel objected to the testimony of certain witnesses on the second day of trial, counsel did not indicate that he did not have notice that certain witnesses would be testifying about defendant having sexually assaulted them See *People v Jackson*, 498 Mich 246, 261; 869 NW2d 253 (2015) (the purpose of the notice requirement regarding other-acts evidence is "to promote reliable decision making, to prevent unfair surprise and to offer the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice") (quotation marks and citation omitted). As noted by defendant, defense counsel never objected on the issue of notice, and there is no indication that defense counsel was unprepared to question the witnesses.

Additionally, defendant acknowledged that he had previously been convicted of a crime as a result of sexually assaulting MM and that he had pleaded *nolo contendere* to that charge in exchange for not being prosecuted regarding other allegations made by MM, TC, and AR. Therefore, at minimum, defendant was aware of those other allegations. It also appears from the record that defense counsel was aware that the prosecutor did not plan to call AB, who was the one witness for whom notice was given but who did not testify. Thus, it appears that there was off-the-record communication between the prosecutor and defense counsel regarding the prosecution's witnesses. Finally, we observe that defendant has not provided us with any offer or proof, affidavit from defense counsel, or any other evidence tending to contradict the clear inference that defense counsel did actually receive timely notice. Had defendant done so, we would have been obligated to consider that evidence, for the limited purpose of determining whether to remand for an evidentiary hearing. *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013). We therefore conclude that defendant has failed to establish plain error affecting substantial rights.

Defendant also argues that defense counsel "was ineffective for failing to object based on a lack of notice." However, the record does not support that defense counsel was not provided with notice, see *Muhammad*, 326 Mich App at 63, and an attorney is not obligated to raise futile objections, see *Head*, 323 Mich App at 539. Moreover, for the reasons already discussed, there is not a reasonable probability that the outcome of the proceeding would have been different.

## B. ADMISSION OF THE OTHER-ACTS EVIDENCE

Defendant next argues that the trial court abused its discretion by admitting the other-acts evidence under MCL 768.27a because it was unfairly prejudicial and cumulative pursuant to MRE 403.[5]  We disagree.

Defendant argues that he was prejudiced by the admission of testimony from five women in addition to the victim, each of whom described sexual assaults committed against them (and other girls) when they were preteens.  However, all probative evidence is prejudicial, and "MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation omitted).  Ordinarily, other-acts evidence must be regarded with caution because of the risk that the jury will use it for propensity purposes.  See *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).  But as explained below, MCL 768.27a explicitly permits the admission of character evidence to prove propensity.  "Accordingly, when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012).  Thus defendant's claim that he was unfairly prejudiced by the admission of evidence from these witnesses is wholly without merit.

There is no doubt the evidence was highly probative, and, in light of defendant's argument that the victim was falsely accusing him, the evidence was important to the prosecution's case.  We are unpersuaded that the probative value of the challenged evidence was *substantially* outweighed by concerns of unfair prejudice.  MRE 403.

## C. CONSTITUTIONALITY OF MCL 768.27a

Defendant next vaguely argues that MCL 768.27a violates his right to due process because MCL 768.27a allows for the admission of character evidence to prove propensity to commit the charged crimes.  According to defendant, use of this evidence "jeopardizes the presumption of innocence."  However, while evidence may be allowed that previously would have been inadmissible under MRE 404(b), the standard for obtaining a conviction has not changed. *People v Wilcox*, 280 Mich App 53, 55-56; 761 NW2d 466 (2008), reversed on other grounds 486 Mich 60 (2010).[6]  See also *People v Pattison*, 276 Mich App 613, 619; 741 NW2d 558 (2007).  Moreover, the members of the jury were instructed that defendant was "presumed to be innocent" and that they could not convict defendant "solely because [they] think he is guilty of other bad conduct."  Jurors are presumed to follow their instructions.  See *Abraham*, 256 Mich App at 279.

---

[5] Although defendant notes that MRE 609(c) "disallows the use of a conviction for impeachment if [the conviction is] over 10 years old," MCL 768.27a provides no such limitation.  See *People v Watkins*, 491 Mich 450, 488; 818 NW2d 296 (2012).

[6] Defendant also argues that MCL 768.27a "is unfair to people like [him.]"  To the extent that defendant is attempting to raise an equal protection argument, the argument is abandoned because defendant fails to present it in a meaningful manner.  See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

## V.  REQUEST FOR REMAND

As noted, we may revisit our prior denial of defendant's motion to remand for a *Ginther* hearing.  *Smith*, ___ Mich App at ___, slip op at p 10).  However, we conclude that defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective.  Therefore, we again deny defendant's request for a remand for a *Ginther* hearing.  MCR 7.211(C)(1)(a).

Affirmed.


/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron
/s/ Michelle M. Rick