*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JEROME WALTER KOWALSKI,

       Defendant-Appellant.

UNPUBLISHED
November 2, 2023

No. 361620
Livingston Circuit Court
LC No. 08-017643-FC

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

In 2013, a jury found defendant guilty of two counts of first-degree murder, MCL 750.316, and two counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Former Judge Theresa Brennan sentenced defendant to serve two consecutive life-without-parole sentences for the first-degree murder convictions and two years' imprisonment for the felony-firearm convictions. In 2019, after many unsuccessful appeals to this Court and our Supreme Court, defendant's convictions and sentences were ultimately vacated because of judicial misconduct. Defendant stipulated to a new trial. Defendant now appeals by leave granted[1] the trial court's pretrial order denying his motion to dismiss the charges with prejudice. We affirm the trial court's decision.

## I. BACKGROUND

This is the fourth time this case has come before this Court. The facts are not in dispute in this appeal. Our Supreme Court set forth the relevant background facts for this case in *People v Kowalski*, 492 Mich 106, 110-111; 821 NW2d 14 (2012):

      In May 2008, the brother and sister-in-law of defendant, Jerome Walter Kowalski, were found dead in their home. Defendant was charged with both

---

[1] *People v Kowalski*, unpublished order of the Court of Appeals, entered October 24, 2022 (Docket No. 361620).

murders. Testimony elicited at defendant's preliminary examination and *Walker*[1] hearing indicates that police questioned defendant about the killings four times over the course of several days: first at defendant's home, next at the Brighton Police Station, then at the Ann Arbor Police Department, and finally at a Michigan State Police post.

During the third interview session, defendant acquiesced to the interviewer's statement that there was a "fifty percent chance [he killed his brother], but a fifty percent chance [he] didn't." Defendant discussed having a "blackout" and "blurred" memory and stated, "I thought I had a dream Thursday, but it was the actual shooting."

Defendant confessed to the murders during the last interview session, which followed a night in jail. Defendant stated that he went to his brother's home, walked into the kitchen, and murdered his brother and sister-in-law after a brief verbal exchange. The record suggests that defendant initially described shooting his brother in the chest from a distance of several feet, although he eventually changed his account after a Detective illustrated through role-playing that defendant's first version of events did not corroborate the evidence recovered from the victims' house. At this point in the pretrial proceedings, defendant's confession is the primary evidence implicating him in the murders.

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

---

Defendant was convicted and sentenced to life imprisonment. Years later, it was discovered that the judge who had presided over defendant's trial, former Judge Theresa Brennan, failed to disclose her romantic relationship and communication with a key witness during trial. The circumstances surrounding her failure to disclose are at the heart of this appeal.

Shortly before defendant's trial in 2013, the Livingston County Prosecutor received a letter from a local attorney that alleged Judge Brennan had failed to disclose her social relationships with two police officers who were witnesses in the case. This letter was given to defendant and his trial counsel on the same day it was received. Defendant then moved for Judge Brennan to recuse herself on the basis of "an allegation with respect to the Court being socially friends, social friends with two prospective witnesses of significance to this case." Judge Brennan refused to recuse herself, reasoning that her friendship with the two witnesses did not affect her ability to handle defendant's case. Defendant appealed this decision to Circuit Court Judge David J. Reader.

Defendant framed his challenge on the "appearance of impropriety," acknowledging that "[w]e don't have any actual showing in this situation that Judge Brennan is, in fact, prejudice [sic] with respect to" defendant. Judge Reader acknowledged that judges had friendships with many different individuals and were members of the community. The assistant prosecutor in the case stated that

the record in the lower Court was that there is no actual bias. There's no . . . actual facts that have been placed on the record. There has been nothing to indicate concern that there may have been facts known prior to the letter that was received this morning and weren't acted on before. And so in light of all of that, we just really want to get this trial rolling on Monday.

Judge Reader affirmed Judge Brennan's decision, reasoning that a mere "social friendship with two officers" was insufficient to order recusal. Judge Reader stated that he himself was aware of the friendships and that it was "well known by the legal community here in this . . . area."

In 2018, the Judicial Tenure Commission (JTC) filed a complaint against former Judge Brennan. The Master found that, at the time of defendant's trial, former Judge Brennan had been romantically involved with one of the officers involved in the case, Detective Sean Furlong, and had failed to disclose this to defendant.[2] During an Attorney General investigatory hearing, Detective Furlong testified that he, former Judge Brennan, and other prosecutors had often spent time together in group settings. Furlong testified that the prosecutor had known that he and former Judge Brennan were friends and that "it wasn't a secret." He explained that, after the letter was received, the prosecutor did not ask him any questions about his relationship with former Judge Brennan because the prosecutor "was well aware for years how close friends Theresa and I were. That wasn't a surprise for her."

In her testimony at the JTC proceedings, former Judge Brennan testified that, in the years leading up to defendant's trial, she, two detectives, and many other individuals would often visit the bar together and engage in other group activities. When asked who knew about her relationship with the detective, former Judge Brennan replied, "The prosecutor knew I was friends with [the Detective]." Former Judge Brennan explained which prosecutors had known of her friendship with Detective Furlong, which included the prosecutor in defendant's trial, Pam Maas. In June 2019, our Supreme Court removed former Judge Brennan after conducting a de novo review of the JTC's recommendation. *In re Brennan*, 504 Mich 80, 86; 929 NW2d 290 (2019). The Court adopted the JTC's findings of fact based on evidence that former Judge Brennan "socialized with Furlong, that she allowed him to use her cottage, that Furlong had been a dinner guest at her home, and that [Brennan]'s husband sometimes gave Furlong his University of Michigan football season tickets at [Brennan]'s urging, as well as evidence of the number of telephone calls and texts between [Brennan] and Furlong." *Id*. at 93.

On January 8, 2019, upon stipulation by both the prosecutor and defendant, the trial court granted defendant's motion for relief from judgment, vacated defendant's convictions and sentences, and ordered a new trial. However, in April 2022, defendant moved to dismiss his charges with prejudice for two reasons. First, defendant argued that the prosecutor and others had known about former Judge Brennan and Detective Furlong's romantic relationship but had chosen to intentionally conceal it from defendant, thereby violating the duty under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), to disclose impeachment evidence. Defendant

---

[2] Many other instances of misconduct were at issue in the JTC proceedings, but they are not relevant to this appeal.

contended that the proper remedy for such "willful and egregious" misconduct was dismissal of all charges, not retrial. Secondly, defendant argued that double jeopardy also barred retrial because of the prosecution's egregious misconduct. The trial court denied defendant's motion to dismiss, reasoning that there was no binding authority to support either of defendant's positions.

## II. ANALYSIS

### A. STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss is reviewed for an abuse of discretion. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). The trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *Id*. This Court reviews de novo constitutional issues, *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012), such as those involving a *Brady* violation, *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016), or double jeopardy, *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

### B. DISCUSSION

Defendant argues that he is entitled to relief based on the prosecutor's *Brady* violation and the Double Jeopardy Clause. We disagree. We note that defendant frames this case as one of first impression in this Court. He argues that other jurisdictions allow for dismissal of charges when faced with egregious prosecutorial misconduct and that the Michigan Constitution should likewise be interpreted to bar retrial in such circumstances. However, defendant's framing of this issue is misguided and he relies on precedent that addresses circumstances distinguishable from his case.

As an initial matter, we believe that there exists a strong argument that defendant waived any challenge to his remedy by stipulating to retrial. But in his reply brief, defendant argues for the first time that he did not make a "knowing waiver" because he stipulated to a new trial based on "the probability of actual bias by the judge" which was "not a waiver of double jeopardy rights as to undisclosed prosecutorial misconduct." Specifically, defendant argues that he stipulated to the new trial before receiving the transcript of Detective Furlong's interview with the Attorney General in which he disclosed evidence of prosecutorial misconduct.

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Buie*, 298 Mich App 50, 57; 825 NW2d 361 (2012). Constitutional rights may be waived if the waiver is made "intelligently, understandingly and voluntarily." *Id*. "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation omitted). When defense counsel expresses satisfaction with the trial court's decision, counsel's action will be deemed to constitute a waiver. *Id*. at 214-215.

In the present case, defendant explicitly agreed that retrial was the appropriate remedy. At the time of his stipulation, former Judge Brennan and Detective Furlong's romantic relationship was known. The JTC Master's Report was released in December 2018. Defendant stipulated to retrial in January 2019. But defendant did not receive the transcript of Detective Furlong's interview with the Attorney General until June 2019. In this interview, Detective Furlong largely

confirmed what was already known from the Master's Report. However, defendant argues that he learned of two additional pieces of information from this interview that further support his claim of prosecutorial misconduct: (1) Maas did not ask Detective Furlong about his relationship with Judge Brennan following defendant's recusal motion (thereby violating her duty to inquire under *Brady*), and (2) Maas asked Detective Furlong to sit at counsel table during defendant's trial as a "favor" because Maas knew Furlong was friends with the judge. The Court does not find that Detective Furlong's interview was so revelatory as to invalidate defendant's stipulation to retrial. More importantly, there is no indication that the stipulation was not made knowingly, intelligently, voluntarily, or understandingly.

Regardless of waiver, we hold that, on the merits, defendant is not entitled to dismissal. When the prosecution suppresses material evidence from the defendant, it violates his right to due process of law, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 US at 87. See also *People v Burger*, 331 Mich App 504, 516-517; 953 NW2d 424 (2020). The test for a *Brady* violation has three elements: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 517, quoting *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Evidence that is favorable to the accused can be exculpatory evidence or impeachment evidence. *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). "Moreover, the rule encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in this case, including the police." *Id*. quoting *Kyles v Whitley*, 514 US 419, 421-422; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (internal quotation marks and citations omitted). Suppression of evidence may be intentional or inadvertent. *Id*. at 281-282. "When the reliability of a witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule [of Brady]." *People v Abcumby-Blair*, 335 Mich App 210, 218; 966 NW2d 437 (2020) (alteration in original) (quotation marks and citation omitted).

The crux of defendant's argument is that the prosecutor and others in the prosecutor's office knew about former Judge Brennan and Detective Furlong's romantic relationship but intentionally failed to disclose this to defendant, thus violating *Brady*. Defendant contends that even if the prosecutor did not know the "full extent" of the relationship, the prosecutor had a duty (1) to inquire, and (2) to share known facts. Defendant asserts that the prosecutor failed to do either. Although a *Brady* violation may have occurred in this case, we cannot conclude that defendant is entitled to dismissal.

The evidence shows that the prosecutor withheld impeachment evidence from the defendant. Detective Furlong testified that Maas did not ask him about his relationship with Judge Brennan because she "was well aware for years how close friends [the judge] and I were." While this may show that, at the time, Maas was only aware of their close friendship, and not romantic relationship, close personal friendships can pose a serious risk of actual bias such that the judge is disqualified from presiding over a case. MCR 2.003(C)(1)(b) ("The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party…, or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct").

Further, prosecutors have a duty to learn of any favorable evidence "known only to police investigators and not the prosecutor". *Strickler*, 527 US at 281. While the prosecutor may not have known the extent of the relationship, Detective Furlong most certainly did. No matter what Maas thought she knew of the relationship, she had a duty to learn of the actual extent of the relationship as known by Detective Furlong. Furlong's testimony indicates that the prosecutor failed to ask him anything about the relationship in response to defendant's recusal motion. Because prosecutors have a duty to learn of any evidence known only to police, who might in turn testify on the prosecution's behalf, responsibility for evidence within Detective Furlong's control is imputed to the prosecution. See *id*. at 281-282.

The prosecutor also had independent knowledge of the relationship as evidenced by Furlong's testimony to the Attorney General. Detective Furlong revealed that he would have conversations with prosecutor Maas about his trips to Judge Brennan's cottage and his multiple lunches with Judge Brennan. Maas's knowledge is evidenced by her decision to seat Furlong at counsel table when he was not the officer in charge of the case. Detective Furlong himself thought this was a "bizarre" request and interpreted it as a "favor" due to his close relationship with Judge Brennan. This decision can only be interpreted as an attempt to exploit Furlong's relationship with Judge Brennan to gain an advantage at trial. Therefore, defendant has met the first element of his *Brady* claim.

The second *Brady* element, that the suppressed evidence must have been favorable to the defendant, can include exculpatory evidence as well as impeachment evidence. *Strickler*, 527 US at 281-282. Evidence of Judge Brennan's relationship with Detective Furlong would have been favorable to the defense because Detective Furlong's testimony could have been impeached by questioning his relationship with Judge Brennan. Thus, defendant has met the second prong of *Brady*.

The third element–materiality–is often the most difficult element to analyze. See *Strickler*, 527 US at 282. To establish that the suppressed evidence was material, a defendant must show that,

> there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.... The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Dimambro*, 318 Mich App at 219, quoting *Chenault*, 495 Mich at 150–151 (citations and quotation marks omitted).]

We know that defendant did not receive a fair trial because of former Judge Brennan's misconduct. But had the prosecutor disclosed her knowledge of the personal relationship, which was known or should have been known through a proper inquiry, there is a reasonable probability that the result of defendant's trial would have been different. It is clear that the defendant could

have used this information to bolster his recusal motion, and if Judge Brennan would have remained the presiding judge on the case, could have used this information to impeach the prosecution's star witness, Detective Furlong. As to the recusal motion, it is almost certain that had the prosecution disclosed what Detective Furlong knew of the relationship, Judge Brennan would have been forced to recuse herself and defendant would have received a fair trial before an impartial judge.

We conclude that the prosecutor violated her duty under *Brady* by failing to disclose her personal knowledge of the relationship and by failing to inquire into the relationship when defendant moved for Judge Brennan's recusal.

However, we cannot conclude that this warrants dismissal because the remedy for a *Brady* violation is a new trial, and defendant concedes as much. See, e.g., *Kyles v Whitley*, 514 US 419, 421-422; 115 S Ct 1555; 131 L Ed 2d 490 (1995); *People v Christian*, 510 Mich 52, 91; 987 NW2d 29 (2022). In addition, the remedy for prosecutorial misconduct is generally a new trial. See, e.g., *People v Aceval*, 282 Mich App 379, 389-393; 764 NW2d 285 (2009). This remedy is proper because, when evaluating a *Brady* violation or other prosecutorial misconduct, the issue is one of a fair trial for the defendant. See *Burger*, 331 Mich App at 517; *Aceval*, 282 Mich App at 391. See also *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). In *Aceval*, we explained that

> [i]t does not follow that a due process violation should bar retrial, because such a remedy would be unduly broad and would fail to address the specific harm the defendant has suffered. Specifically, barring retrial on the basis of due process grounds would amount to "punishment of society for [the] misdeeds of a prosecutor" because it would permit the accused to go free. [*Id*. (second alteration in original.)]

Therefore, *Aceval* held that, although the prosecutor's and trial court's misconduct violated the defendant's right to due process, a new trial was the appropriate remedy. *Id*. at 392. While we noted that "both the trial court's and the prosecutor's conduct was plainly reprehensible, the blameworthiness of either is not the critical factor, because the primary inquiry is the misconduct's effect on the trial." *Id*. at 392-393.

Defendant's position ignores that the misconduct is not the primary inquiry. Rather, it is the fairness of the trial. Defendant provides no binding authority to support his position that retrial should be barred. Defendant raises the Michigan Rules of Professional Conduct, but even assuming the prosecutor and others violated these rules, "the remedy for their wrongs is accomplished in other forums, such as the Attorney Discipline Board and the Judicial Tenure Commission." *Id*. at 392. They have no bearing on the outcome of this appeal because the rules "do not confer upon a defendant any type of constitutional right or remedy." *Id*.

We similarly reject defendant's argument that double jeopardy would be implicated if he were to be retried. Defendant argues prosecutorial misconduct can lead to dismissal of charges under the Double Jeopardy Clause. Defendant's position on double jeopardy is misplaced.

-7-

Both "[t]he Michigan and federal constitutions provide that no person shall twice be put in jeopardy for the same offense." *People v Dawson*, 431 Mich 234, 250; 427 NW2d 886 (1988). Double jeopardy limits the state generally to having only one attempt at obtaining a conviction. *Id*. The purpose behind double jeopardy is the long-held belief that the government "should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id*. at 251 (quotation marks and citation omitted). "Where the trial ends before a verdict—where a mistrial is declared—the Double Jeopardy Clause may bar a retrial." *Id*. However, even when there is a mistrial, double jeopardy allows for retrial in numerous circumstances, such as when a mistrial is because of a hung jury or "where the prosecutor or judge made an innocent error." *Id*. at 252. Retrial is also permitted when it is the defendant who moves for or consents to a mistrial. *Id*. at 253. But double jeopardy "bars retrial where prosecutorial conduct was intended to provoke the defendant into moving for a mistrial." *Id*.

> Defendant relies on our following statement in *Aceval*:
>
> This is not to suggest however, that prosecutorial misconduct can never invoke the constitutional protection against double jeopardy. On that issue, we offer no opinion because, as Judge MURPHY notes in his concurrence, "there is no indication whatsoever that the prosecutor committed the misconduct for the purpose of avoiding or preventing an acquittal, nor can it be said that an acquittal was likely to occur if the prosecutor refrained from the misconduct or that the prosecutor believed such was the case." [*Aceval*, 282 Mich App at 391 n 5.]

However, this language was dicta, and it is not binding precedent. See *People v Warner*, 339 Mich App 125, 138; 981 NW2d 733 (2021). Defendant also relies on authority addressing instances in which the prosecutor's actions caused a mistrial in some fashion. In the present case, a jury found the defendant guilty, but his convictions were eventually vacated. Accordingly, a different set of legal standards governs. It has long been held that retrial is *not* barred by double jeopardy when a defendant obtains postconviction relief. See, e.g., *Tibbs v Florida*, 457 US 31, 39-40; 102 S Ct 2211; 72 L Ed 2d 652 (1982); *Burks v United States*, 437 US 1, 13-15; 98 S Ct 2141; 57 L Ed 2d 1 (1978). "This Court has consistently held that the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant *who has succeeded in persuading a court to set his conviction aside*, unless the conviction has been reversed because of the insufficiency of the evidence." *Oregon v Kennedy*, 456 US 667, 676 n 6; 102 S Ct 2083; 72 L Ed 2d 416 (1982) (emphasis added).

Insufficiency of the evidence is not an issue in this case. Defendant obtained postconviction relief, and his retrial is not barred by double jeopardy. Therefore, we conclude that the trial court did not abuse its discretion by denying defendant's motion to dismiss his charges with prejudice.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates